JAMES DENIS HOGAN, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 5400

May 28, 1968                    441 P.2d 620

*James D. Santini,* Public Defender, *Anthony M. Earl,* Deputy Public Defender, of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, *George E. Franklin, Jr.,* District Attorney, *George H. Spizzirri,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, Batjer, J.:

On February 18, 1967, the appellant, James Denis Hogan, and a Richard Lee Powell, were arrested in the men's room in Squires Park in Las Vegas, for having committed the infamous

crime against nature, in violation of NRS 201.190. Specifically the act was fellation.

Prior to trial, the appellant demurred to the information on the ground that the statute upon which it was based is unconstitutionally vague and indefinite and does not adequately define the crime charged. The lower court denied the demurrer, and the case went to trial. At the conclusion of that trial the appellant was found guilty and sentenced to the Nevada State Prison for not less than one, nor more than five years.

At the conclusion of the proceedings below, the appellant moved to arrest the judgment. That motion was also denied.

This appeal is taken from the judgment entered against the appellant by the trial court, and also from the denial of the motion in arrest of judgment, upon the ground that the appellant's rights, protected by the Fourteenth Amendment of the U.S. Constitution, had been violated.

We do not agree with this contention.

At the time of the commission of the offense, NRS 201.190 read as follows: "1. The infamous crime against nature, either with man or beast, shall subject the offender to be punished by imprisonment in the state prison for a term not less than 1 year and which may be extended to life * * *."

NRS 193.050 recites: "The provisions of the common law relating to the commission of crime and the punishment thereof, insofar as not inconsistent with the institutions and statutes of this state, shall supplement all penal statutes of the state, and all persons offending against the same shall be tried in the district courts of this state."

Such supplementation by the common law is not peculiar to our state.

"Most of the statutes fail to define with any degree of certainty the manner in which the crime against nature may be committed. Therefore, the rule applies that when a public offense has been declared by statute in the general terms of the common law, without more particular definition, and punishment provided therefor, the courts will resort to the common law for the particular acts constituting the offense, at least in those states in which the common law originally prevailed or has been adopted by statute." 2 Wharton's Criminal Law and Procedure § 751, p. 573.

The term common law, has reference not only to the ancient unwritten law of England, but also to that body of law created and preserved by the decisions of courts as distinguished from that created by the enactment of statutes by legislatures.

In that respect, the common law of Nevada in regard to the infamous crime against nature is found in In re Benites, 37 Nev. 145, 140 P. 436 (1914), a case involving fellation. There, this court held: "It is sufficient, we believe, to say that the infamous crime against nature as mentioned by our statute should be no less in its scope that [sic] that which was understood as designated by Hawkins in his Pleas of the Crown, wherein he states, 'All unnatural carnal copulation seems to come under the notion of sodomy * * *.' In other words, it is our judgment that Section 6459 of our Revised Laws (NRS 201.190) seeks to define and punish acts of unnatural copulation in whatsoever form those acts may be perpetrated, and without regard to the means or manner of perpetration * * *. [I]t is our judgment that it is not unreasonable to assume that all unnatural acts of carnal copulation between man with man or man with woman, where a penetration is affected into any opening of the body, other than those provided by nature for the reproduction of the species, are sufficiently contemplated and embraced within the term the 'infamous crime against nature' as set forth by our statute."

The acts constituting the infamous crime against nature are clearly delineated when the statute is supplemented by reference to the *Benites* case. In the case of Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270 (1940), the appellant there contended that the statute violated the due process clause of the Fourteenth Amendment of the Federal Constitution. The Supreme Court of Minnesota had construed the statute in question and the United States Supreme Court said: "This construction is binding upon us. Any contention that the construction is contrary to the terms of the Act is unavailing here. For the purpose of deciding the constitutional questions appellant raises we must take the statute as though it read precisely as the highest court of the State has interpreted it * * *. This construction of the statute destroys the contention that it is too vague and indefinite to constitute valid legislation * * *."

Ever since this court decided the *Benites* case, the meaning and scope of the offense of the infamous crime against nature has been so clear and unambiguous that every person, in the State of Nevada, can know with certainty what acts constitute the crime.

It should be noted that this court is not unique in this interpretation of the infamous crime against nature. At least twenty-one other states define it similarly. See 2 Wharton's Criminal Law and Procedure § 752, p. 575. The phrase "infamous

crime against nature" indicates an offense against nature and the laws of nature, and is as inherently understandable as are such words as "robbery", "larceny", "burglary", and even "murder." All are "words of art" disclosing their full meaning through interpretation, usage and application.

NRS 201 is sufficiently broad to include not only the common law crime of sodomy, but also all unnatural carnal copulations. The judgment of the lower court is affirmed.

THOMPSON, C. J., COLLINS, ZENOFF, JJ., and BOWEN, D. J., concur.

MOWBRAY, J., being disqualified, the Governor commissioned Honorable Grant Bowen of the Second Judicial District to sit in his place.