James Lewis WARNER and Wilma Jean Warner, Plaintiffs in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16544.

Court of Criminal Appeals of Oklahoma.

Sept. 1, 1971.

Rehearing Denied Oct. 21, 1971.

Roger F. Walker, Oklahoma City, David Davis, Legal Intern, for plaintiffs in error.

Larry Derryberry, Atty. Gen., Paul Ferguson, Asst. Atty. Gen., Paul Crowe, Legal Intern, for defendant in error.

BUSSEY, Presiding Judge.

Wilma Jean Warner and James Lewis Warner, hereinafter referred to as defendants, were charged, tried and convicted in the District Court of Oklahoma County for the offense of Oral Sodomy; their punishment was fixed at four years imprisonment, and from said judgments and sentences, a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial revealed that on September 16, 1970, Miss Jerry Sellars was 18 years old. She testified that she was walking home after purchasing a package of cigarettes, when the defendants offered her a ride home. She got into the car, because she did not think anything would happen and because they were nice enough to stop. They asked her if she would like to get a beer, and she agreed. The defendant, James Warner, went into a tavern to get the beer, wherein defendant Wilma Warner, attempted to get Miss Sellars to kiss her. She started to get frightened, and was relieved to see defendant James Warner return to the car.

She told them that she needed to return home, and defendant James Warner agreed, as soon as he checked a party. He drove to their house and forced the girl to go inside, stating that she was going to have to make love to them. She attempted to lock herself in the bathroom, but was unsuccessful. The defendants forced her to leave the bathroom, and in the struggle, the toilet seat broke.

She, thereafter, described numerous acts of sexual intercourse and oral sodomy which she was forced to perform with both the defendants. The sordid unnatural acts testified to by this witness are such that

little value could be gained by setting them forth in detail in this opinion. They finally agreed to take her home, and on the way home, defendant James Warner required her to commit a further act of oral sodomy. They let her out near her home, and she told a friend what had happened. She was taken to the police station, and then to the hospital.

Officers Calvary and Hooten testified that they arrested the defendants and observed various items of clothing and furniture in defendants' home which the victim identified. They testified that upon interrogation, the defendants denied having seen the victim before. Officer Calvary testified that he observed a broken toilet seat in the bathroom, which the victim had described.

The parties stipulated that Dr. Osborn would testify that he examined the victim early that morning, and that she had recently been involved in sexual intercourse.

Melba Brown and William Earls testified as to the good character and reputation of the defendants.

Defendant Wilma Warner testified that she and her husband did pick up Miss Sellars on the evening in question, and that the girl voluntarily entered the house, and that her husband did have intercourse with the girl in her presence on several occasions. She testified that Miss Sellars was a voluntary participant in the intercourse. She admitted that she and Miss Sellars kissed and fondled one another, but that no oral sodomy took place between any of the parties. She testified that they first told the police that they did not know the girl because they were afraid that her husband would be in trouble because they were Negroes, and the girl was white.

Defendant James Warner did not testify.

The first two propositions assert that the court erred in overruling defendant Wilma Warner's Demurrer to the evidence, and the court erred in instructing the jury in that it would be legally impossible for two women to commit the "crime against nature." This is a case of first impression in

that an exhaustive search reveals that this issue has never been decided in Oklahoma. The testimony of the victim revealed that the defendant Wilma Warner performed copulation per os on the victim, and in turn, had the victim perform copulation per os on her, the defendant. This Court, in 1917, recognized the distinction between copulation per anum. and copulation per os in the case of Ex parte DeFord, 14 Okl.Cr. 133, 168 P. 58, wherein the Court stated:

"For the reason that it is the opinion of this court that section 2444, Rev.Laws 1910, supra, meant to cover sodomy in its broader definition as hereinabove indicated, *copulation between human beings through the mouth is included within its prohibitions*, and the judgment of the district court of Bryan county pronounced on the petitioner's plea of guilty to the aforesaid charge is valid." [Emphasis added.]

In LeFavour v. State, 77 Okl.Cr. 383, 142 P.2d 132 (1943), this Court stated in the second paragraph of the Syllabus:

"The word 'mankind' * * * includes both male and female. 21 O.S.1941 § 886."

■ This state's judicial history in dealing with sexual perversion reflects a slow and painful process wherein the Court of Criminal Appeals has attempted to discreetly define the multiple acts encompassed in the offense of Crime Against Nature. Going one step further, we specifically hold that copulation per os between two females is a violation of 21 O.S. § 886.

■ The next proposition contends that the verdict is not substantiated by sufficient evidence. The defendants argue that because of the incredulous nature of the testimony of the complaining witness that the conviction cannot be sustained, since there is insufficient evidence to corroborate her testimony. We are of the opinion that the testimony of the complaining witness is no more incredulous than that of the defendant Wilma Warner, wherein she

testified that Miss Sellars asked permission to have intercourse with her husband and the sordid account of the sexual activities between the three of them. We further observe that there was corroboration of the victim's testimony; the police officers observed various items of clothing and furniture which the victim had previously described, including the broken toilet seat. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and to determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805 (1970).

The next proposition alleges that the District Attorney made improper comments in his closing argument. We have examined each of the comments that defendants cite as improper and find that in two instances the trial court admonished the jury to disregard the remarks. We have previously held that when the trial court properly admonishes the jury to disregard a remark, and the remark objected to does not constitute fundamental error, a reversal on appeal will not lie. Montgomery v. State, Okl.Cr., 447 P.2d 469. We are of the opinion that the other improper comments now complained of by defendants were not such as to improperly influence the jury. It is apparent from the lenient verdict imposed that the closing argument of the District Attorney did not improperly influence the jury.

The final proposition contends that the statute under which the defendants were convicted is unconstitutional. This contention is based on the premise that 21 O.S. § 886 is so vague as to be invalid, and further that it is broad enough to cover consensual marital acts. The Nevada Court faced the same contention as to the unconstitutional vagueness of their similar Crime Against Nature Statute in Hogan v. State, 84 Nev. 372, 441 P.2d 620, wherein the Court stated:

"It should be noted that this court is not unique in this interpretation of the infamous crime against nature. At least twenty-one other states define it similarly. See 2 Wharton's Criminal Law and Procedure, § 752, pg. 575. The phrase 'infamous crime against nature' indicates an offense against nature and the laws of nature, and is as inherently understandable as are such words as 'robbery', 'larceny', 'burglary', and even 'murder.' All are 'words of art' disclosing their full meaning through interpretation, usage and application."

We concur with the opinion of the Nevada Court, and specifically rule that the language of 21 O.S. § 886 is definite in that men or women of common knowledge can reasonably understand the conduct prohibited by said statute.

We have examined the cases cited by defendants to support their contention that the statute was void, in that it is so broad as to cover consensual acts of married people. Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510; Buchanan v. Batchelor, D.C., 308 F.Supp. 729, and Cotner v. Henry, 7 Cir., 394 F.2d 873. We are of the opinion that the United States Supreme Court, in the landmark case of Griswold v. State of Connecticut, supra, does not prohibit the state's regulation of sexual promiscuity or misconduct between non-married persons. We, therefore, find this proposition to be without merit.

In conclusion, we observe that the record is free of any error which requires reversal or justifies modification. The judgment and sentence is accordingly affirmed.

NIX and BRETT, JJ., concur.