**Jobie KIRK, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–15765.**

Court of Criminal Appeals of Oklahoma.

June 7, 1972.

Archibald Hill, Jr., Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Sondra Leah Fogley, Asst. Atty. Gen., for appellee.

BUSSEY, Presiding Judge:

Appellant Jobie Kirk, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Carter County, Oklahoma, for the offense of Larceny of Domestic Animals; his punishment was fixed at three (3) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Robert Bust testified that he was directed by Sheriff Rudd to take certain photographs on or about December 10, 1968. He identified State's Exhibits One and Two as the photographs that he took at the Sheriff's request.

Sheriff Rudd identified the pictures of the cow and calf, a Bang tag which was taken from the cow's ear depicted in the photograph, and a bank deposit slip given him by the defendant on December 3 or 4, 1968.

Dennis Maher testified that he was a farmer-rancher and that in October, 1968, he discovered a Hereford cow and a black calf missing. He testified that the cow was branded with a JD connected on the right hip. In November, 1968, he observed the cow and calf going through a sale barn in Sulphur. He testified that the cattle were in the possession of the defendant. He asked the defendant where he had obtained the cow and calf and the defendant stated that he had bought them. Maher returned to Ardmore and notified the County Sheriff. He identified the photographs as being pictures of his cow and calf that were sold at the Sulphur Sale Barn.

Jim Freeman testified that he helped his parents operate the Sulphur Sale Barn. He identified a check issued by his mother as one given the defendant on November 29, 1968, for the purchase of a cow and calf. The State and defendant then stipulated that the defendant did receive the check in the amount of two hundred nine-

ty-nine dollars and ninety-nine cents ($299.99) from the Freeman Livestock Auction and that the check was deposited to the defendant's account in the Exchange National Bank.

Dr. Willis, a Veterinarian, identified the metal "Bang tag" as the same one he had placed in the ear of a cow owned by Dennis Maher on September 16, 1967. He testified that it was not possible for any tags to have duplicate numbers and the tags were furnished by the United States Department of Agriculture.

Deputy Denney testified that he was present when the photographs of the cow and calf were taken and that the cow had a "JD brand on her right hip." He testified that on December 9, 1968, he placed defendant under arrest and transported him to Sheriff Rudd's office. Both Marvin Turner and Sheriff Rudd advised the defendant of his "rights." He further testified that defendant acknowledged that he understood his rights and agreed to talk to the Sheriff.

Sheriff Rudd was recalled and testified that he advised the defendant of his constitutional rights by reading to him from a card. He further testified that Marvin Turner, an employee of the Cattlemen's Association, also advised the defendant of his rights. Defendant first stated that he bought the cow and calf at a livestock auction at Milburn. He subsequently admitted that he loaded the cow and calf at his mother's and took them to the sale barn in Sulphur and that he had done it without permission.

Marvin Turner testified that he was a brand inspector for the Texas Southwestern Cattlemen's Association. He further testified that both he and Sheriff Rudd advised the defendant of his constitutional rights. Defendant, after first stating that he had purchased the cows, later admitted that "I let them out of the pasture and drove them down to mother's place and loaded them."

For the defense, Sheriff Rudd was recalled and testified that the defendant's confession was neither reduced to writing nor recorded.

The defendant testified that he was employed as a mortician and was engaged in the cattle business as a side line. He testified that according to his records (which were not introduced into evidence) he bought the cow in question from Pat Telford in 1967. He testified that the cow was placed in a pasture which adjoined the pasture leased by Maher. He never concealed the cow and that Maher's cows had occasionally strayed into his pasture as well as his cows straying into Maher's. He testified that he did not see a brand on the cow in question but that cows he purchased frequently did have brands on them. He testified that he was not advised of his rights by the Sheriff or Turner and that after the Sheriff and Turner repeatedly accused him of stealing the cows he said in anger, " 'If you want to call me a cow-thief. I'm a heck of a cow-thief. I got a bunch of them out there' " (Tr. 150)

Five character witnesses testified that the defendant enjoyed a reputation in the community in which he lives as being a truthful, law-abiding citizen.

 Defendant, in his brief, states, "The principal issue of this appeal is whether or not there was sufficient evidence to justify the jury's finding of guilty." He argues under this general proposition that the ownership by Dennis Maher was not adequately proven; that there was not adequate proof presented to show that defendant intended to convert the cattle to his own and to permanently deprive the owner therefrom; and nor was there sufficient evidence to find that the defendant's confession was freely and voluntarily given. We need only to observe that these questions were properly presented to the jury who chose to believe the State's witnesses rather than the testimony of the defendant. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, this Court will not

interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805.

■ Defendant's final contention is that "[T]he State did not establish the jurisdiction under which the particular offense took place." The record does not reflect that the question of venue was raised during the trial of the case nor was the question presented to the trial court in the Motion for New Trial. In Workman v. State, Okl.Cr., 491 P.2d 308, we stated:

"* * * We further observe the Record reveals that the defendant did not raise the question of venue in the trial court nor did he request an instructed verdict, because of insufficient proof of venue. In Morris v. State, Okl.Cr., 363 P.2d 377 (1961), we stated:

'The constitutional right to be tried in the county in which an offense is committed is a personal privilege which may be waived. In re Poston, Okl.Cr., 281 P.2d 776 and general 14 Am.Jur. § 233, page 30.

'Where it is apparent that the court and the jurors have personal knowledge of the places named by different witnesses, tending to show that the offense was committed within the county of trial, and defendant decides to challenge the venue, he should request an instructed verdict because of insufficient proof of venue and move for a new trial on that ground in order that the trial court may determine the issue.'

"In the instant case, the defendant's failure to properly raise the question of the venue in the trial court precludes his raising the same for the first time on appeal."

In conclusion, we observe the record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.