**Jim Harlan MOORE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17407.**

Court of Criminal Appeals of Oklahoma.

Sept. 20, 1972.

Curtis A. Parks, Public Defender, Thomas W. Whalen, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for appellee.

BUSSEY, Presiding Judge:

Appellant, Jim Harlan Moore, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Oklahoma, for the offense of Sodomy, After Former Conviction of a Felony; his punishment was fixed at thirty-five (35) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, David Lane, age eleven, testified that he was the stepson of the defendant. At about 5:30 p. m. on July 16, 1971, the defendant called him into the house and asked him to shine his boots. His mother was in the kitchen and the other children were playing in the backyard. He and the defendant went into the defendant's bedroom and the defendant locked the door. The defendant told him to take off his clothes and the defendant placed his penis into David's rectum. David screamed and the defendant placed his hands over his mouth. His mother knocked on the door and said, "What are you doing?" The defendant said, "Wait just a minute" and told David to put his clothes on quickly. He testified that the entire act lasted about thirty minutes. His mother later called him into the house and asked him to tell her the truth about what had happened. David told her what had occurred. He testified that a similar occurrence had happened approximately four years before when he and the defendant were hunting near Leonard. The defendant was gone from the home approximately two years and when he returned similar occurrences happened about ten times. He testified that he was taken to the hospital

on a prior occasion by his mother because his rectum was bleeding.

Bertha Ann Hollowell testified that she was the records librarian at Hillcrest Medical Center and identified State's Exhibit 1 as hospital records.

Dr. Nance Barber testified that she examined David Lane on April 7, 1971. David was brought to the hospital by his mother and complained of passing blood in his bowel movements. She testified that on rectal examination she found "a small crack in the rectal wall, otherwise known as a fissure, at about seven o'clock." She examined him the following week and he still complained that there was some bleeding but that it was improved. Other appointments were set up for David, which he failed to keep. She testified that after examining the X-rays, she could find nothing to indicate any organic problem that would cause the boy's bleeding. She further testified that the fissure could have been caused by a hard object being inserted in the rectum.

Elizabeth Melton testified that she was David Lane's aunt and sister-in-law of the defendant. She testified that after she and her husband had a conversation with David on July 17, 1971, they took him to the juvenile authorities.

Dr. Robert Hudson testified that David Lane was brought to his office by the Child Welfare Department on July 31, 1971. He examined the boy and did not find a fissure on the rectal wall. He testified that a fissure will usually heal itself if allowed to rest, within a week to ten days. He examined the X-rays of David Lane marked State's Exhibit 1 and testified that in his opinion the fissure was caused by a hard tool, a hard object or foreign object.

For the defense, Jo Ann Moore testified that she was the wife of the defendant and the mother of David Lane. She testified that on the afternoon in question she was at home with a friend, Christine Bodway, and her three children. The defendant went to work that morning and came home sick around 10:00 a. m. He laid down on the divan in the front room and slept there most of the day. She testified that she did not hear the defendant ask David to shine the shoes and denied knocking on the door of the bedroom and asking if he was in there. She testified that the door between the front bedroom and the bathroom was nailed shut and that the door between the kitchen and the back room could not be locked. She denied that David had ever told her anything about any sexual acts with the defendant.

Christine Bodway testified that she went to visit the Moores at approximately 10:00 on the day in question. The defendant was sleeping on the couch when she arrived. She testified that to her knowledge nothing unusual or extraordinary happened between the defendant and David. She did not hear any disturbances nor did she see the defendant or David leave her presence at the same time.

Defendant testified that he went to work the morning of July 6, and was forced to return home about 10:00 because he was feeling ill. He slept intermittently on the couch in the living room during the day. He denied anything unusual happening that day between him and David, as well as denying that he had engaged in other sexual acts with David. He testified that he had been convicted of armed robbery and served two years and two months in prison.

David Lane was called in rebuttal and testified that the door between the kitchen and the bedroom was nailed shut and blocked off until he was taken to the juvenile authorities.

Geraldine Lane, David's aunt, testified in rebuttal that the door between the kitchen and the bedroom was nailed shut.

The first proposition asserts that the court erred in overruling defendant's demurrer to the evidence on the ground there was no corroboration to the testimony of the witness David Lee Lane. In the early

case of Cole v. State, 84 Okl.Cr. 76, 179 P.2d 176, the Court stated:

"* * * Although there is no corroboration of the prosecuting witness as to the acts committed by the defendant which constitute the abominable crime of sodomy, if this Court follows the rule applied in rape cases, the conviction may be sustained upon the uncorroborated evidence of the prosecuting witness, unless such testimony appears incredible and so unsubstantial as to make it unworthy of belief. * * * "

We are of the opinion that the young victim's testimony was not so incredible or unsubstantial as to make it unworthy of belief, thus requiring corroboration. We further observe that David Lane's testimony as to prior acts of sodomy was corroborated by the testimony of the doctors. We, therefore, find this proposition to be without merit.

The second proposition contends that 21 O.S., § 886 "is void on its face for unconstitutional overbreadth insofar as it reaches acts protected by the First and Fourteenth Amendments to the United States Constitution." Defendant cites as authority Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510, wherein the United States Supreme Court declared a Connecticut statute prohibiting the use of contraceptives unconstitutional, holding that private consensual marital relations are protected from regulation by the state through the use of criminal penalties. In discussing Griswold in Warner et al. v. State, Okl.Cr., 489 P.2d 526, we stated:

"* * * We are of the opinion that the United States Supreme Court, in the landmark case of Griswold v. State of Connecticut, supra, does not prohibit the state's regulation of sexual promiscuity or misconduct between *non-married persons*. We, therefore, find this proposition to be without merit."

We are of the opinion that the right of the State of Oklahoma to regulate sexual promiscuity and sexual misconduct between non-married persons to be far superior to defendant's right to express sexual unity by performing an unnatural sex act with a young male child. We therefore, find this proposition to be without merit.

The third proposition asserts that 21 O.S., § 886 is unconstitutionally vague and therefore void on its face. In dealing with a similar proposition in *Warner,* supra, we stated:

"* * * The Nevada Court faced the same contention as to the unconstitutional vagueness of their similar Crime Against Nature Statute in Hogan v. State, 84 Nev. 372, 441 P.2d 620, wherein the Court stated:

'It should be noted that this court is not unique in this interpretation of the infamous crime against nature. At least twenty-one other states define it similarly. See 2 Wharton's Criminal Law and Procedure, § 752, pg. 575. The phrase "infamous crime against nature" indicates an offense against nature and the laws of nature, and is as inherently understandable as are such words as "robbery", "larceny", "burglary", and even "murder." All are "words of art" disclosing their full meaning through interpretation, usage and application.'

"We concur with the opinion of the Nevada Court, and specifically rule that the language of 21 O.S. § 886 is definite in that men or women of common knowledge can reasonably understand the conduct prohibited by said statute."

We, therefore, find this proposition to be without merit.

The next proposition contends that the words "detestable and abominable" as used in 21 O.S., § 886, constitute an improper legislative attempt to comment upon the evidence, resulting in a prejudicial usurpation of the power of the jury by the Oklahoma State Legislature. In dealing with a similar proposition in Johnson v.

State, Okl.Cr., 380 P.2d 284, wherein Judge Nix stated:

"Defendant objects to the language *Detestable and abominable* as being prejudicial.

"In the case of Roberts v. State, 57 Okl. Cr. 244, 47 P.2d 607, the crime of Sodomy was stated in the identical language which is set forth in the Statute and the case at bar. The Court said:

'The detestable and abominable crime against nature, committed with mankind or a beast made punishable by Penal Code (section 2553 St.1931), includes not only the offense of sodomy, but any other act as bestial, or unnatural copulation.'

'An information charging the commission of the crime against nature, in the language of the statute, with a person named, is sufficient.'

"The Instructions described the crime in the same manner as it was described in the Information to which there was no objection, and in the same language as the Statute. Therefore, it did not constitute error of a fundamental nature * * *."

Defendant in the instant case did not object to the instruction which described the crime in the same manner as it was described in the information. We, therefore, find the proposition to be without merit.

 The fifth proposition asserts that the court erred in allowing Witness Geraldine Lane to testify in violation of the rules of sequestration of witnesses. The Witness Lane was called by the State as a rebuttal witness and the name was not endorsed upon the information. As the Attorney General succinctly points out:

"Common sense tells us that it would be impossible to sequester a rebuttal witness before a trial commenced because the State has no idea of what testimony the defendant will introduce. Consequently, a rebuttal witness who is called for the purposes of explaining, repelling, contradicting or disproving evidence introduced on behalf of the defendant might be totally unknown to the State at the time that the trial commences and the rule of sequestration could not be invoked."

We likewise find this proposition to be without merit.

The final proposition contends that the punishment is excessive. The question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case. We have previously held that this Court does not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the Court. Roberts v. State, Okl.Cr., 473 P.2d 264. We are of the opinion that the defendant's acts committed upon his eleven-year-old stepson richly warrant the punishment imposed.

The judgment and sentence is accordingly affirmed.

SIMMS, J., concurs.

BRETT, J., concurs in results.