**Kenneth Dale CANFIELD, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17471.**

Court of Criminal Appeals of Oklahoma.

Feb. 14, 1973.

William P. Porter, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Kenneth Dale Canfield, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Case No. CRF–71–944, for the offense of Oral Sodomy, After Former Conviction of a Felony. His punishment was fixed at fifteen (15) years imprisonment, and from said

judgment and sentence, a timely appeal has been perfected to this Court.

At the non-jury trial, the parties stipulated to the statement of facts. The defendant had been drinking in a bar in Oklahoma City when he was approached by the co-defendant, Arnold Billings, who had been drinking in the same bar, and was asked to ride around. While riding around, the two agreed to engage in the act of oral sodomy. They pulled off the road approximately 100 yards, into a clump of trees, and reclined in the seat of the automobile. A police officer driving by observed the car and, thinking it might be stolen, stopped to investigate. He walked up to the car and observed Co-defendant Billings performing an act of oral sodomy upon the defendant.

The only fact not agreed upon was whether the door to the vehicle was locked. The officer reported the door was unlocked while the defendant contended that the door was locked.

■ The first proposition asserts that 21 O.S., § 886, is unconstitutional "as being too broad and indefinite subjecting the defendant to rule by man rather than law." In dealing with a similar proposition in Warner v. State, Okl.Cr., 489 P.2d 526, we stated:

" * * * The Nevada Court faced the same contention as to the unconstitutional vagueness of their similar Crime Against Nature Statute in Hogan v. State, 84 Nev. 372, 441 P.2d 620, wherein the Court stated:

'It should be noted that this court is not unique in this interpretation of the infamous crime against nature. At least twenty-one other states define it similarly. See 2 Wharton's Criminal Law and Procedure, § 752, pg. 575. The phrase "infamous crime against nature" indicates an offense against nature and the laws of nature, and is as inherently understandable as are such words as "robbery", "larceny", "burglary", and even "murder." All are "words of art" disclosing their full

meaning through interpretation, usage and application.' "

We therefore find this proposition to be without merit.

■ The second proposition contends that 21 O.S., § 886 is unconstitutional "in light of the facts of this case, and is not in the protection of a public interest." Defendant argues that the statute does not allow consenting adults to engage in sexual activity which is guaranteed to them by the Fifth and Fourteenth Amendments to the United States Constitution. In *Warner, supra,* we stated:

"We have examined the cases cited by defendants to support their contention that the statute was void, in that it is so broad as to cover consensual acts of married people. Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510; Buchanan v. Batchelor, D.C., 308 F.Supp. 729, and Cotner v. Henry, 7 Cir., 394 F.2d 873. We are of the opinion that the United States Supreme Court, in the landmark case of Griswold v. State of Connecticut, supra, does not prohibit the state's regulation of sexual promiscuity or misconduct between non-married persons. We, therefore, find this proposition to be without merit."

■ The third proposition asserts that the defendant has the constitutional right to have facilities provided for him that would rehabilitate his conduct and personality. We are of the opinion that this proposition is without merit. In Ex parte Combs, 87 Okl.Cr. 164, 195 P.2d 772, we stated:

" * * * Therein we also said that the designation of the place of confinement is an administrative and not a judicial act. Moreover, we held that the legislature has full authority to provide prisons, and to determine where prisoners may be sent; and the courts have no discretion as to the place to which criminal may be sentenced except as the legislature gives it. * * * "

The final proposition asserts that the trial court erred in permitting the Amended Information showing a prior conviction when the previous charge of Second Degree Manslaughter had no relationship or similar elements to oral sodomy. We need only observe that the defendant does not support this proposition with the citations of authority. We have previously held that it is necessary for defendant not only to assert error but to support his contentions by both argument and the citation of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this Court will not search the books for authorities to support the mere assertion that the trial court has erred. Sandefur v. State, Okl.Cr., 461 P. 2d 954.

The judgment and sentence is, accordingly, affirmed.

BLISS, P. J., concurs.

BRETT, J. , concurs in part and dissents in part.

BRETT, Judge (concurring in part, and dissenting in part).

I agree that defendant in this case, having admitted the act of "sodomy," should be required to answer for his offense; but I dissent to the holding that 21 O.S.1971, § 886 is constitutional. I also dissent to the punishment imposed, which I consider to be patently excessive under the facts of this case.

As I view 21 O.S.1971, § 886, it is unconstitutionally vague as its meaning is not ascertainable from the language of the statute. The prohibited conduct is not clearly expressed so that the ordinary person of common intelligence can determine exactly what he may, or may not do.

It is fundamental that "no one may be required at peril of life, liberty or property, to speculate as to the meaning of a penal statute. All are entitled to be informed of what the State commands or forbids." Lanzetta v. New Jersey, 306 U.S. 451, 453,

59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). As this Court stated in Powers v. Owen, Okl. Cr., 419 P.2d 277, 279 (1966), speaking through Judge Bussey:

"[A] legislative enactment must meet the constitutional requirement that its mandates are so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it.

. . . . . .

" 'A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' "

In Grayned v. City of Rockford, 408 U. S. 104, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972), the rule was stated by the United States Supreme Court:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

I hasten to admit also, that the Supreme Court of Nevada was correct when that court stated in Hogan v. State, supra, the phrase "infamous crime against nature" is a phrase of "art," but I do not agree that it is as understandable as are the words "robbery," "larceny," "burglary," and even "murder." At least those words can be

found in any ordinary dictionary, but the phrase "abominable and detestable crime against nature" is not defined in any dictionary this writer has consulted. The ordinary person of common intelligence, and even some lawyers, are unaware of "2 Wharton's Criminal Law and Procedure, § 752, pg. 575"; consequently, that reference does not satisfy the test for constitutionality of the statute. In substance, if the crime is "sodomy," then the statute should so state and not leave persons to guess at its meaning. Likewise, the fact that courts have interpreted the statute for a hundred years does not satisfy the constitutional requirement.

Also, just because the persons of 1890 and 1910, when the statute was formulated, may have been offended at the word "sodomy," that puritan belief is no justification for perpetuating an unconstitutionally vague statute. The Supreme Court of Florida met this same question in Franklin v. State, 257 So.2d 21 (1971), when that court held a similar statute unconstitutional and said:

"We have over a long period of time upheld the statute despite earlier constitutional challenges. We are persuaded that these holdings and this statute require our reconsideration. One reason which makes this apparent is the transition of language over the span of the past 100 years of this law's existence. The change and upheaval of modern times are of drastic proportions. People's understandings of subjects, expressions and experiences are different than they were even a decade ago. The fact of these changes in the land must be taken into account and appraised. Their effect and the reasonable reaction and understanding of people today relate to statutory language.

. . . . . .

"A further reason dictating our reexamination here is the expansion of constitutional rulings on the invasion of private rights by state intrusion which must be taken into account in the consideration of this statute's continuing validity. The language in this statute could entrap unsuspecting citizens and subject them to 20-year sentences for which the statute provides. Such a sentence is equal to that for manslaughter and would no doubt be a shocking revelation to persons who do not have an understanding of the meaning of the statute.

. . . . . .

"Common law definitions are of course resorted to when the forbidden conduct is not defined. This may supply the deficiency for a legal understanding of a vague statute, but it cannot meet the constitutional requirement that the language of the statute be understandable to the common man."

More recently enacted statutes of other states, which treat the offense concerned in this case, specifically define "sodomy" and "aggravated sodomy." Senate Bill 22, now before the first session of the 34th Oklahoma Legislature, likewise defines the offense without words of antiquity, so the ordinary person of common intelligence can understand what is prohibited.

I concurred in this Court's decision in Warner v. State, Okl.Cr., 489 P.2d 526 (1971); but at this point in time I am convinced that 21 O.S.1971, § 886, is unconstitutional and should be so declared. Also, the facts of Warner v. State, supra, are clearly distinguishable to the instant case.

Therefore, if defendant is to be punished in this case, I believe that punishment should be accomplished under the provisions of 21 O.S.1971, § 22, "Outraging Public Decency."