**Darlene M. McGLUMPHY, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–66.**

Court of Criminal Appeals of Oklahoma.

July 14, 1975.

R. W. Byars, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Darlene M. McGlumphy, hereinafter referred to as defendant, was charged, tried and convicted in the Tulsa County District Court, Case No. CRF–73–1805, for the offense of Possession of a Forged Instrument, in violation of 21 O.S. 1971, § 1579. The jury recommended, and the court imposed, a sentence of five (5) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

Defendant was convicted of possessing several stolen and forged checks belonging to Mr. Roy L. McGhee, Jr., owner of a Tulsa construction company on whose account the checks were drawn. The checks, several of which were introduced into evidence by the State, were "doubly forged," i. e. both the drawer and payee's name and endorsement were forged, and were cashed at several grocery stores throughout the state.

The State's first witness, Mr. McGhee, identified State's Exhibits One through Five, as checks stolen from his pickup truck around June 13, 1973, outside his residence in Tulsa. He stated that upon noticing his checkbook missing, he immediately informed his bank and ordered that they stop payment on his company checks numbered 163–500. At trial, Mr. McGhee examined the checks introduced by the State and testified that the signature of his name as drawer was a forgery, and the typed name of Cecelia M. Potter as payee was likewise unauthorized, as he had no employees or acquaintances by that name.

The next four witnesses for the State were employees of retail groceries in Tulsa, Vinita and Ponca City, who testified as to the cashing of the checks. Their testimony was substantially the same, and was to the effect that a white female, in her middle to late twenties, had, in June, 1973, endorsed the checks as payee "Cecelia M. Potter" in return for groceries and cash. Each witness identified the checks which they had cashed by their mark or signature which they had placed thereon. None of the witnesses could positively identify defendant as the individual who had cashed the checks.

The State's next witness, Mary Ann Bash, was given immunity on two pending charges, in return for her testimony as to involvement in a forgery ring involving defendant, the witness, the witness' deceased husband Wilburn Almy, and a fourth individual named "Jimmy." She identified State's Exhibits One through Seven as checks which her husband had given to her, and on which the witness had forged the endorsement of Cecelia M. Potter, using Potter's driver's license as identification in passing the items in various establishments, the location of which she could not remember. She would then give the money to her husband, who would divide it with the defendant. The witness further testified that she had sustained head injuries in an automobile accident which might affect her memory, but that she was not aware of her memory being impaired as to her testimony at trial. She also stated that she had been convicted of one charge arising out of the operation of the forgery ring and was awaiting formal sentencing. She denied that any deal had been made with the District Attorney in return for her testimony.

The State's eighth witness, Cecelia M. Potter, testified that she knew defendant, Mary Ann Bash, the late Wilbur Almy and a Jim Bombagetti, who she identified as the "Jimmy" mentioned in Bash's testimony. She stated that she had lost her driver's license while drunk at a bar with Almy and Bash, and that she was unaware of, and not involved in, the forgery operation. She admitted having served time in the penitentiary for a prior conviction and also testified to being interviewed by Assistant District Attorney Dunn after being "harassed" by a police officer, Lymon Griffin.

The next witness for the State was the investigating and arresting officer, Roy

Nuttall. Before he was allowed to testify before the jury, an evidentiary hearing was held in which he stated that he had been assigned to investigate the McGhee forgery case in January of 1974. He stated that he had learned from an unidentified informant that defendant, Wilbur Almy and Mary Ann Almy (Bash) were involved in the crime. Nuttall stated that he had previously used the informant and found her to be reliable. Upon obtaining this information, the officer, whose expertise in fingerprint identification was stipulated to by defense counsel, stated that, he had positively identified defendant's fingerprints on three of the seven checks introduced as evidence by the State by comparison with fingerprint cards in the police files. He then arrested the defendant without a warrant.

After finding that there was probable cause for arrest without a warrant, the trial court allowed Officer Nuttall to present the above testimony before the jury. He also stated that defendant allowed him to search her apartment, but that no incriminating evidence was found.

The defendant was the only witness in her behalf. She denied any criminal involvement in the forgeries, and explained her fingerprints on the checks by stating that she had innocently handled them for a moment when Wilbur Almy asked her to cash them for him at the bar where she was employed. She stated that she had lived with Jim Bombagetti for several months in 1973, and that she was acquainted with Wilbur Almy and Mary Ann Bash. Defendant also testified that Detective Arley Owens and another detective had talked with her at her apartment in July or August of 1973 before her arrest.

The State next called Arley Owens, a police investigator, to the stand in rebuttal. He stated that defendant called him several times during the period when she was a suspect in the forgery investigation. In one such call, defendant offered to give Owens "information as to certain checks." (Tr. 253) At a subsequent meeting Owens exhibited a number of checks to defendant, including the seven introduced by the State at trial, and defendant related to Owens whatever information she possessed about them. Defendant told him the McGhee Construction Company checks had been stolen from a truck by an unknown person. She stated that she had signed checks numbered 314 and 317 (which were not among the seven checks involved in the instant trial), for a Ronnie McGowen, but did not know who cashed them. She further stated that checks numbered 185, 186, 187, 189, 192, 205 and 213 had been cashed by Mary Ann Almy (Bash) and a Virginia Jackson. (Check numbered 189 was State's Exhibit Five, and check numbered 213 was State's Exhibit Seven.) Defendant denied any knowledge of any other checks. She also told Owens that Officer Nuttall's search of her apartment had failed to turn up checks drawn on Allen W. Motor Company and Scott Plumbing Company and the identifications of Cecelia Potter and Mary Johnson, all of which were hidden in a heating vent.[1]

■ In her first assignment of error, defendant alleges that the evidence was insufficient, as a matter of law, to establish the offense of Possession of a Forged Instrument. Specifically, defendant claims that the State failed to prove possession with knowledge of the forgery, and with intent to utter or pass them, as required by 21 O.S.1971, § 1579, which reads: ·

"Every person who has in his possession any forged or counterfeited instrument, the forgery of which is hereinbefore declared to be punishable, other than such as are enumerated in the last section, knowing the same to be forged, counterfeited or falsely altered with intent to injure or defraud by uttering the same to be true, or as false, or by causing the

---

1. Owens' testimony was in rebuttal to the previous cross-examination testimony of de- fendant, who had denied making the above statements.

same to be uttered, is guilty of forgery in the second degree."

We find that the evidence of defendant's fingerprints on the checks sufficed to establish the fact of possession, from which could arise a presumption of intent and knowledge. This rule was set forth clearly in *State v. Schave,* 72 Okl.Cr. 75, 113 P.2d 203 (1941), where we stated, at page 206:

" . . . Under this statute the main ingredients that are necessary are 'possession', 'intent' and 'knowledge'. It is true that from the fact of possession there may arise a presumption that there was an 'intent' or a 'knowledge', but in the last resort, this is a question for a court or jury to decide, as to whether the evidence in its final analysis is sufficient to supply the 'intent' and the 'knowledge'."

The testimony of Mary Ann Bash, if believed, would place defendant in the company of the individuals who passed the checks at the time they were cashed, and would in addition show defendant actually sharing in the proceeds. Detective Owens' testimony as to defendant's admissions to him about the checks was further evidence of her possession with intent and knowledge. Taken together with the undisputed fact that defendant's fingerprints were on three of the checks, we find that the evidence, albeit circumstantial, was sufficient to sustain the verdict. See *Stumblingbear v. State,* Okl.Cr., 364 P.2d 1115 and *Moore v. State,* Okl.Cr., 503 P.2d 1290.

██ In her second assignment of error, defendant argues that Mary Ann Bash, whom defendant describes as an accomplice, was insufficiently corroborated as required by 22 O.S.1971, § 742, which states:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely

shows the commission of the offense or the circumstances thereof."

We find defendant's contention that Bash's testimony was uncorroborated to be frivolous, in light of both the evidence of defendant's fingerprints found on the checks, and particularly in light of defendant's admissions testified to by Detective Owens. An oft-repeated rule of this Court as to corroboration of an accomplice was set forth in *Brown v. State,* Okl.Cr., 518 P.2d 898 (1974), wherein we stated, at page 901:

" . . . It is a well settled rule that if the State's evidence consists entirely of uncorroborated testimony of an accomplice, the trial court should sustain a motion for a direct verdict. *Lowery v. State,* Okl.Cr., 489 P.2d 222 (1971). However, if the testimony of an accomplice is corroborated by one material fact or facts by independent evidence tending to connect defendant with the commission of a crime, the jury may from that infer he speaks the truth as to all. *Nation v. State,* Okl.Cr., 478 P.2d 974 (1970). Further, the accomplice's testimony may be corroborated by circumstantial evidence. *Sizemore v. State,* Okl.Cr., 507 P.2d 1330 (1973)."

Also, as stated in *Rider v. State,* Okl.Cr., 494 P.2d 347 (1972), " . . . evidence independent of the testimony of the accomplice must tend to connect defendant with the crime itself and not simply with its perpetrators. . . ."

In the instant case the above-mentioned testimony and evidence served to amply corroborate Bash's testimony, and we find defendant's second assignment of error to be without merit.

██ In her third assignment of error, defendant contends that there was no probable cause for her arrest, which arrest defendant claims to have been predicated solely upon an informant's tip. As such, defendant argues, the warrantless arrest

was in violation of 22 O.S.1971, § 196(4), which states:

"A peace officer may, without a warrant, arrest a person:

. . . . . .

4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

In making the above argument, defendant completely ignores the investigation conducted by Officer Nuttall subsequent to his receipt of information from the informant. When, as a result of this investigation, Officer Nuttall was able to match defendant's fingerprints with those on three of the checks, we find that he had probable cause, i. e. "reasonable cause," to arrest defendant without a warrant in compliance with 22 O.S. § 196(4), supra.

In *Whiteley v. Warden of Wyoming Penitentiary,* 401 U.S. 560, at page 567; 91 S.Ct. 1031 at page 1036, 28 L.Ed.2d 306 at pages 312–313 (1971), the Supreme Court of the Untied States held:

"This Court has held that where the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone. [citations omitted]. But the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or, as in Draper itself, were in the process of committing the felony. . . ."

We, accordingly, find this assignment of error to be without merit.

■ In her fourth assignment of error, defendant claims that the State failed to prove venue in Tulsa County; however, our review of the record and Motion for New Trial reveals that defendant nowhere raised this issue at trial, thereby waiving her right to do so on appeal. See, *Kirk v.*

*State,* Okl.Cr., 498 P.2d 412 (1972); *Workman v. State,* Okl.Cr., 491 P.2d 311 (1971); *Application of Poston,* Okl.Cr., 281 P.2d 776 (1955).

For the foregoing reasons, we find defendant's fourth assignment of error to be without merit.

■ In her fifth assignment of error, defendant argues that improper questioning by the prosecutor inquired into collateral matters, specifically as to defendant's possible involvement in crimes other than the one for which she was on trial. We note, however, that with one exception, defendant failed to object to the questions. Thus, defendant waived any alleged error arising therefrom. *Jones v. State,* Okl.Cr., 527 P. 2d 169 (1974). The one question to which defendant did object was as follows:

"BY MR. DUNN [Prosecutor]:

Q. Let me ask you this about Jim Bombagetti: Is he presently under charge for uttering a forged instrument?

MR. BYARS [Defense Counsel]: Objection, your Honor.

A. I don't think so.

Q. (By Mr. Dunn): You don't think so.

THE COURT: I will sustain the objection".

■ We find that the sustaining of the objection, as well as defendant's failure to move that the answer be stricken and the jury admonished, rendered the alleged error harmless beyond all doubt. That being the case, defendant's fifth assignment of error is without merit.

■ In her final assignment of error, defendant claims that certain answers given by State's witness Officer Nuttall on cross-examination constituted evidentiary harpoons designed to implicate defendant in crimes independent of the one for which she was on trial. We quote from the transcript of cross-examination, at page 232:

**1102** <span style="background:black;">              </span>

"BY MR. BYARS:

Q. Officer, how many of those checks got fingerprints on them, just three?

A. Of which checks, sir?

Q. These checks that we have got up here that we have been looking at for the last two days, how many of them have got Darlene McGlumphy's fingerprints on them?

A. Those three are the only ones here that have Darlene McGlumphy's fingerprints on them.

MR. BYARS: If the Court please, may I have a conference.

(Thereafter the following proceedings were had at the bench.)

MR. BYARS: Comes now the defendant and moves for a mistrial for the reason that the police officer made the remark which indicated that there were other checks someplace else with Darlene McGlumphy's fingerprints on them and by God if they have got them they ought to bring it in, it looks like she has committed another crime than what she is on trial for here today.

MR. DUNN: That the only intonation they would have gotten was because of defense counsel's reaction to the remark.

THE COURT: I will deny the motion for a mistrial."

Even the most cursory examination of the remarks complained of make it abundantly clear that the officer's answer was responsive to the question and did not, directly or indirectly, refer to the commission of any other crime by the defendant. We find this assignment of error to be entirely without merit.

Having dealt with all of defendant's assignments of error, and finding nothing in the record that would justify modification or reversal, the judgment and sentence appealed from is accordingly, *affirmed.*

BRETT, P. J., and BLISS, J., concur.