John Leroy McCLAIN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–472.

Court of Criminal Appeals of Oklahoma.

Jan. 16, 1976.

Rehearing Denied Jan. 26, 1976.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, John Leroy McClain, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–74–3322, for the offense of Murder in the Second Degree, in violation of 21 O.S. Supp.1973, § 702. The jury fixed his punishment at from ten (10) years' to Life imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

In that appeal the Public Defender has filed application for leave to withdraw as counsel, reporting that no more than frivolous matter could be presented on appeal. In addition, the defense counsel has, in an attempt to comply with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), filed a memorandum brief, the purpose of which is to point out any error which may serve as a basis for reversal on appeal.

The evidence presented at trial was that on September 21, 1974, at approximately 9:00 p. m., the defendant, accompanied by the deceased, Janelle Westbrook, arrived via the defendant's pickup truck at an apartment house located in the 100 block of Northeast 11th Street, Oklahoma City, where the defendant then resided. According to the testimony of nine-year-old Terrill Johnson, son of Floyd Nash whose apartment was directly across from the upstairs apartment of the defendant, the defendant emerged from his pickup and asked the deceased to remove the keys to the apartment from her purse. The deceased was unable to locate the keys in her purse and suggested that she had locked the keys in the apartment. At this point the defendant began to look for the keys in her purse. While looking for the keys the defendant discovered an unascertained amount of money and asked the deceased where she had gotten it. She replied that her mother had given her the money. At this point the defendant became angry, struck the deceased, and again asked her where she had gotten the money. When she again replied that her mother had given the money to her, the defendant went down the stairs to a telephone and called the deceased's mother who apparently told the defendant that she had not given her daughter the money. The defendant immediately went back upstairs to the deceased and began to curse her and strike her. Then, according to the testimony of Terrill Johnson, the defendant again went down the stairs, picked up a bed slat and went back upstairs. The witness testified that he heard a sound which he believed to be that of the deceased being struck. The stick, broken by its use, was discarded by the defendant. Up until this time the testimony of Terrill Johnson is the sole account of the events. However, the father of Terrill Johnson, Floyd Nash, who had been inside his apartment preparing supper for himself and his son, had heard the commotion outside on the stairway but had observed none of the events until he opened the door of the apartment to call his son in to eat. At this point while Floyd Nash remained inside his open door-

way and his son approached the stairs to come in to eat, the defendant, who was standing at the top of the stairs, struck the deceased with his hand three times. As the result of the third blow the deceased, who was standing near the top of the stairs, fell about half of the way down the stairway. The defendant then approached the deceased and assisted her in walking back up the stairs. At this point the defendant attempted to kick in the apartment door, managing only to injure his leg. Floyd Nash, at the request of the defendant, used a ladder to gain entrance to the upstairs window of the defendant's apartment, and opened the door for the defendant and the deceased.

Ronnie Jacobs testified that later that same evening while passing through an alley behind the apartment complex, the defendant summoned his aid. Jacobs went to the upstairs apartment of the defendant and entered, whereupon the defendant showed him the deceased who was at that time lying unconscious on the back porch of the apartment. Ronnie Jacobs helped the defendant move her into the apartment where they placed her on the bed. On the following Sunday morning the deceased, still lying on the bed, was viewed by yet another person, Joyce Grundy. Testimony submitted by Joyce Grundy revealed that the deceased made no response whatsoever to any conversation or actions; and revealed that the body of the deceased, unclothed from the waist up, bore numerous bruises. Soon thereafter, as the evidence suggests, the defendant called an ambulance which took the deceased to a nearby hospital.

On October 2, Dr. Chapman, Medical Examiner for the State of Oklahoma, performed an autopsy on the body of Janelle Westbrook. The autopsy revealed that death had been caused by a traumatic head injury, resulting in intense pressure on the brain from internal hemorrhaging. The testimony of the medical examiner included a statement that this particular type of injury could have occurred as the result of a fall down a flight of stairs.

In light of the foregoing facts, coupled with a thorough review of the record, this Court is of the opinion that the conviction should be affirmed. First of all, it is obvious that the evidence submitted to the jury was more than sufficient to sustain the result which was subsequently reached. In *Warner v. State*, Okl.Cr., 489 P.2d 526 (1971), this Court said:

" . . . We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. . . ." (Citation omitted)

The evidence in the instant case was competent and affords a reasonable basis on which a verdict of guilty could be returned.

Secondly, this Court in reviewing the instant case has thoroughly examined the record for any error which would afford the defendant a reasonable argument on appeal. Unable to find any error which would justify such modification or reversal, the judgment and sentence is, accordingly, *affirmed*.

BUSSEY and BLISS, JJ., concur.