Timothy Robert CASADY, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-84-251.

Court of Criminal Appeals of Oklahoma.

July 16, 1986.

E. Alvin Schay, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Timothy Robert Casady was convicted in Custer County District Court of the crimes of Rape in the First Degree, two counts of

Sodomy, Kidnapping and one count of Forcible Sodomy, each count being After Former Conviction of a Felony. He received sentences of one hundred years' imprisonment on the rape conviction, one hundred fifty years' on the two sodomy convictions, one hundred years' on the kidnapping conviction, and one hundred fifty years' on the forcible sodomy conviction.

These charges all arose from an encounter between appellant and L.P. beginning about 10:20 p.m. on the evening of April 26, 1983, and ending sometime probably after 12:00 a.m. on April 27, 1983. The victim, L.P., had returned on this Tuesday evening to the classroom where she taught to pick up some lessons she had left on her desk. As she returned to her automobile from the school, a man she could not identify grabbed her by the neck and hair and forced her to her vehicle. When she pressed the horn he pulled her out and knocked her to the ground. He threatened to break her neck if she did not shut up. He again shoved her into her automobile where she was forced to keep her eyes turned from looking at her assailant. From there, they traveled to an isolated pasture where L.P. was raped and sodomized a number of times. Her assailant returned L.P. and her automobile to Clinton, and parked it near by the school from which she had been kidnapped.

■ L.P. returned to her apartment and telephoned her cousin and his wife who immediately came to aid her. They later took her to the hospital for a medical examination. The cousin and his wife were each allowed to answer questions at trial regarding L.P.'s physical and emotional condition on the morning after the attack. Appellant claims that their testimony was irrelevant and prejudicial and that the trial court erred in not granting his motion for mistrial. He claims that the only probative value of this evidence was that of L.P.'s injuries, and that this was outweighed by the prejudicial value of the evidence. 12 O.S.1981, § 2403.

The statements complained of include such things as the victim was scared, shaking, and cold; that she was very upset and crying; that L.P. and her cousin's wife embraced. They each mentioned that her pastor and his wife were called. The cousin's wife responded when asked her relationship to L.P. that, "Spiritually I'm a sister. Physically, I'm a cousin by marriage."

From our review of the record, we find that many of the statements were relevant. Evidence is relevant when it has a tendency to make the existence of a significant fact more probable or less probable. 12 O.S. 1981, § 2401; *President v. State,* 602 P.2d 222 (Okl.Cr.1979). L.P.'s emotional state was probative of the issue of consent. Her distraught state indicates she had not consented to the sexual relations, and in fact that the acts described actually occurred. Her physical appearance would certainly have a bearing on these issues as well. The testimony regarding telephoning L.P.'s pastor was offered in the course of these witnesses reciting the events of the morning.

We note that defense counsel failed to object to the prosecutor's questions of these two witnesses. Instead, he simply asked the court to declare a mistrial. Since the trial judge has discretion in judging the admissibility of evidence, we will reverse only for abuse, which we do not find here. *Hutchens v. District Court,* 423 P.2d 474 (Okl.Cr.1967). Any error was harmless, and not sufficient to prejudice appellant. *Hager v. State,* 665 P.2d 319 (Okl.Cr.1983).

Appellant was charged with two counts of sodomy under 21 O.S.1981, § 886. One was the act of appellant of anal sodomy and one was his act of oral sodomy against L.P. He asserts the statute is unconstitutional because it is vague in describing the forbidden conduct as "the detestable and abominable crime against nature."

We have upheld this statute as not being unconstitutionally vague. *Carson v. State,*

529 P.2d 499 (Okl.Cr.1974); *Canfield v. State,* 506 P.2d 987 (Okl.Cr.1973), appeal dismissed 414 U.S. 991, 94 S.Ct. 342, 38 L.Ed.2d 230, rehearing denied 414 U.S. 1138, 94 S.Ct. 884, 38 L.Ed.2d 763 (1974); *Moore v. State,* 501 P.2d 529 (Okl.Cr.1972), certiorari denied, 410 U.S. 987, 93 S.Ct. 1517, 36 L.Ed.2d 185 (1973). In *Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973), the Supreme Court upheld such a statute against a claim of vagueness.

■ A criminal statute requires only reasonable certainty and the prohibited act may be characterized in general terms. *Pratt v. State,* 642 P.2d 268 (Okl.Cr.1982). A sufficiently definite warning as measured by common understanding and practices is all that is required. *Hildahl v. State,* 536 P.2d 1292 (Okl.Cr.1975). The statute under review is sufficiently definite.

Appellant next claims error occurred when the trial court refused to call a special overnight recess to examine certain evidence a State's witness was explaining in court. In fact, the evidence was an enlarged replication of latent fingerprints and palm prints removed from L.P.'s automobile. An expert from the Oklahoma State Bureau of Investigation, Ron Young, testified to his conclusion that based upon his comparison of these prints to appellant's finger and palm prints, that they were from the same person.

Appellant claims these enlargements were "new evidence" which caused a harmful surprise under 12 O.S.1981, § 2403, and that the State violated the trial court's order to produce "any scientific tests or expert comparisons."

■ Ron Young testified concerning the finger and palm prints at appellant's preliminary hearing. The prints were introduced at that time. We do not consider the enlarged copies either new evidence or a scientific test. The comparisons that the expert witness made were those he testified to at preliminary hearing. Appellant's counsel cross-examined him in depth at that time. Further, defense counsel clarified on the record at preliminary hearing that he and an expert would have access to the prints for examination in the future, to which the court agreed. We find no abuse of discretion by the trial court in allowing the witness to testify with reference to the enlargements without calling for an overnight recess. *Bennett v. State,* 652 P.2d 1237 (Okl.Cr.1982). *See Driskell v. State,* 659 P.2d 343 (Okl.Cr.1983) and *Graves v. State,* 563 P.2d 646 (Okl.Cr.1977).

The appellant contends that the State's fingerprint expert, Ron Young, improperly testified at trial because he could not answer all of appellant's questions on cross-examination concerning the exact number of points of similarities he found between the known prints and the latent prints found on L.P.'s automobile. He claims that allowing his witness to give an expert opinion violated 12 O.S.1981, § 2705, which provides:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The *expert may be required to disclose the underlying facts or data on cross-examination.* (Emphasis added.)

During direct examination by the State, this witness testified that he dusted L.P.'s automobile for fingerprints, particularly the hood and front fenders. It was on the hood where one series of rape and sodomies occurred. Young testified he was able to recover thirty-four latent prints from the vehicle, fifteen of which were useable. He identified State's exhibits 34-A through 34-J as latent prints he developed. He proceeded to identify in court the finger and hand print ink card of Timothy Robert Casady he had been provided by the sheriff for comparisons. He explained both the art of print development and of print comparison. He actually made a

chart of comparisons from enlarged photographs of one latent print and the inked print of Casady. He marked his points of similarity between the two and expounded to the jury the comparisons he made and the basis of his conclusion that the prints were from the same individual.

On cross-examination, defense counsel inquired as to the number of similarities the witness had found on each of the other latent prints. The witness stated a minimum number but said without using a magnifying glass, he could not at that moment provide an exact count. Defense counsel extensively cross-examined Young in this regard, and the witness repeatedly responded that he could not give answers without again using his magnifying glass. He advised that he did not make notes on all the points of similarities he found between the prints. This, appellant claims, caused a denial of his Sixth Amendment right to confront this witness.

■ The conclusion of a fingerprint expert is acceptable evidence in Oklahoma. *See McGlumphy v. State,* 538 P.2d 1097 (Okl.Cr.1975). Yet, the jury remains the ultimate judge of facts, and the weight to be given the opinion of an expert is also for the jury to decide. *Riggle v. State,* 585 P.2d 1382 (Okl.Cr.1978). Therefore, the bases of the experts opinion should be provided when explored by counsel. *Rollerson v. United States,* 343 F.2d 269 (D.C. Cir.1964). The opinion should be excluded if it is unsupported by the underlying facts. *Id.; Logsdon v. Baker,* 517 F.2d 174 (D.C. Cir.1975).

■ Here, however, the witness graphically demonstrated the basis of his conclusion. There was no evidence that the comparison process used was improper or inadequate. His testimony was properly admitted. See, *State v. Johnson,* 333 So.2d 223 (La.1976), where on almost identical facts the court ruled as we have.

■ Finally, appellant contends that his sentences are excessive. On each count he

was convicted as a repeat felon, and under 21 O.S.1981, § 51, the penalty for each offense was unlimited. For all practical purposes the sentences will be considered and treated as life sentences. *Camp v. State,* 664 P.2d 1052 (Okl.Cr.1983). Under the facts and circumstances surrounding this case, we do not find his sentences so excessive as to shock the conscience of the Court. *Smith v. State,* 604 P.2d 139 (Okl. Cr.1979).

Finding no error warranting reversal or modification, judgments and sentences are AFFIRMED.

BRETT, J., concurs.

PARKS, P.J., concurs in results.