# The People of the State of New York, Respondent, v Carlos Gonzalez, Appellant.

First Department, April 4, 1978

## APPEARANCES OF COUNSEL

*Susan A. Powers* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Daniel Taub* of counsel *(Steven R. Kartagener* with him on the brief; *Mario Merola, District Attorney),* for respondent.

## OPINION OF THE COURT

EVANS, J.

Appellant was charged with acting in concert with two others to rob two attendants at a gas station. Following a jury trial appellant was convicted of two counts of first degree robbery. At the trial neither attendant was able to identify appellant and over the objection of defense counsel police officer Moroney was permitted to testify that one of the attendants (Grant) had at the police station identified appellant as an active participant in the robbery approximately 40 minutes following the occurrence.

On appeal, appellant argues that the pretrial showup at the police station was suggestive and prejudicial and that testimony concerning that prior identification was improper and

not consistent with his constitutional rights, and without such testimony there was no conclusive evidence that he was in fact the third man in the robbery.

As the appellant's due process arguments turn upon the facts, a review of the evidence presented at trial is warranted.

Francisco Acevedo, one of two gas station attendants was accosted by a thin man with glasses and a mustache (Velez), who demanded money from him at the point of a revolver. Once Acevedo handed over his money, he was ordered to walk toward the gas station office. On his way to the office he saw a shorter man with a light complexion, afro haircut, a T-shirt, dungarees and a dungaree hat who was withdrawing a shotgun from a paper bag.

Meanwhile, the other gas station attendant Erald Grant was approached by another gunman. He was a short, dark thin man in a dark jacket brandishing a gun (Devia). A second later the tall thin man (Velez) joined the two and ordered Grant to give him all his money and ordered him to walk to the gas station office. As he walked toward the office Grant passed, and saw the face of a third man who was short and light complexioned.

Grant met Acevedo at the office door, from which he saw the three robbers enter a gold Cougar and drive out of the station into Webster Avenue. At that moment a patrol car containing Detective Usiak and Officer Moroney was passing in the opposite direction along Webster Avenue. Seeing the car exit the station and run a red light, the police immediately executed a U-turn and began pursuit. The high speed chase came to an abrupt halt a few feet from the corner of 161st Street and the Grand Concourse. Detective Usiak leaped out and ran toward the Cougar. Devia jumped out of the Cougar and fired a shot at the approaching police officer. Usiak fired six shots in return, killing Devia. Rodriguez, a male Hispanic, about 150 pounds with short hair and wearing a light colored dashiki jumped out and fired a shotgun blast. After firing the shot, Rodriguez fled and was not apprehended at that time.

Meanwhile, Officer Moroney told the car's remaining occupants, appellant Gonzalez and Velez, to "freeze". A pistol was subsequently retrieved from the front seat.

Appellant Gonzalez and Velez got out of the back seat. Moroney described appellant as having, at that time, an afro haircut, a mustache, a white T-shirt, dungarees and sneakers.

Moroney took the two men into custody and took them to the 42nd Precinct. A short time later Mr. Grant was brought to the station house and identified Velez as one of the men who had taken his money. Grant also identified appellant Gonzalez as the third man he had seen at the gas station. Mr. Acevedo was also taken to the station house. Although he was able to identify Velez, he could not positively identify Gonzalez as the third man.

At trial, Grant was unable to identify Gonzalez; however, Officer Moroney testified that while he questioned Grant at the station house and asked him to describe the third man, Grant looked into an adjoining office where appellant Gonzalez was standing and identified appellant Gonzalez as being the third man at the gas station.

Defendant admits that he was one of the four men in the Cougar when it drove into the gas station that night. He also admits that two of the car's occupants, Velez and Devia, had robbed the gas station on the night in question. In essence, defendant's argument is that the People failed to prove that it was he and not codefendant Rodriguez, and the fourth occupant of the car, who was the third gun-toting man seen at the gas station. A review of the evidence compels the conclusion that it was Gonzalez, not Rodriguez, who was observed standing in the station with a shotgun.

Grant saw Gonzalez at the station in a well-lit area at a distance of only three to four feet. Although Grant did not view Gonzalez for a long period of time he was able to see his face. At the police station, less than an hour later, he identified Gonzalez as the third person at the gas station.

■ Through the testimony of Acevedo and the arresting officers the People established beyond any reasonable doubt that the third man was Gonzalez and not Rodriguez. Acevedo testified that although he did not get a good look at defendant's face he could provide a description of his complexion, hair and clothing. He stated that the person he saw at the scene with a shotgun had a four-inch afro style haircut, a light complexion and was wearing a T-shirt, dungarees, and a dungaree hat.

Detective Usiak stated that when appellant Gonzalez was taken out of the car he had an afro hair style, a T-shirt, dungarees and sneakers. On the other hand, Rodriguez was described by the officers as having short hair and wearing a dashiki.

Thus, in view of the foregoing the only way a jury could find that Gonzalez was not the third person at the gas station was, if in the course of the chase, Gonzalez and Rodriguez were somehow able to switch hair styles and shirts.

The sum of the evidence produced at trial therefore leads to the inescapable conclusion that appellant was an armed and active participant in the July 18, 1975 gas station robbery and was quite properly found guilty of robbery in the first degree.

At trial, almost one and a-half years later, Mr. Grant was no longer able to identify defendant, but he was able to recall that he had identified at the police station two people who had robbed him on the night in question. Following Mr. Grant's inability to identify appellant at trial, on the basis of a present recollection, Officer Moroney testified that he was certain that appellant Gonzalez was the person whom Mr. Grant had identified as the third gas station robber.

Under CPL 60.25, such testimony by a witness of his pre-trial identification and testimony confirming such identification is admissible and constitutes evidence in chief. (CPL 60.25, subd 2; *People v Nival,* 33 NY2d 391, 394-396.)

▉ Appellant argues that this identification was not consistent with his constitutional rights and therefore testimony concerning it was not within the ambit of CPL 60.25. This argument must fail because the station house viewing of the defendant by Grant fully complies with his constitutional rights. Reliability of identification is to be tested by a determination of whether under a totality of the circumstances there is "a very substantial likelihood of irreparable misidentification." *Simmons v United States* (390 US 377, 384); *Manson v Braithwaite* (432 US 98) and *Neil v Biggers* (409 US 188, 199-200) provide us with suggested guidelines for the determination of reliability such as "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." With the exception of the witness' degree of attention, which is impossible to ascertain from the record, the other elements all seem to emerge on the plus or positive side indicating a reliability difficult to challenge. The procedure utilized at the station house identification of appellant was not unduly suggestive and really does not present a suppression issue.

The station house identification was held less than an hour after the robbery. Significantly, at no time did the police suggest to Grant that they had captured two suspects for him to identify. In fact, Mr. Grant's testimony is that he saw Gonzalez while waiting to be interviewed and during the course of the interview he spontaneously identified him to Moroney.

■ Further, this identification was an accidental showup. Moroney testified that as he asked Grant to describe the third person present at the scene, Grant looked into an office visible from where he sat, saw the appellant Carlos Gonzalez and said "the fellow sitting in the chair, in the office there, he was coming from the office, at that time." Accidental or unarranged "showups" have been held to be "not unnecessarily or impermissibly suggestive since unavoidable and not due to the fault of the police or prosecutor." (Sobel, Eye Witness Identification, p 74, *Mock v Rose,* 472 F2d 619.) The spontaneity of Mr. Grant's identification, without any police prompting, certainly is evidence of the absence of any intentional untoward police conduct. It is clear, therefore, that the procedure utilized in Mr. Grant's identification of appellant may not be condemned as being unduly suggestive and, accordingly, the identification procedure was consistent with appellant's constitutional rights.

The judgment, Supreme Court, Bronx County (OSTRAU, J. at hearing and trial) rendered May 27, 1976, convicting appellant on two counts of robbery in the first degree, should be affirmed.

MURPHY, P. J. (dissenting). At about 10:20 P.M. on July 18, 1975, four men drove up to a gas station in a gold Cougar. Three of the men entered the station and robbed the two attendants, Francisco Acevedo and Erald Grant, at gunpoint. The fourth individual waited in the car. In an ensuing shootout with police, one individual (Devia) was killed, one (Rodriguez) escaped, and two (Velez and the appellant Gonzalez) were captured. At the *Wade* hearing, the testimony of the two attendants suggested that Velez and Devia were present in the station. On appeal, appellant contends that the identification made by the two attendants at the precinct after the robbery was unnecessarily suggestive. Appellant further maintains that, absent that identification testimony, the prosecution did not probatively establish his presence in the gas station as the third robbery suspect. Hence, he argues that the

prosecution must demonstrate his guilt in the robbery as the fourth individual who waited in the car.

At the *Wade* hearing, Acevedo testified that the third participant was wearing a white T-shirt and a dungaree hat over an afro. The hat was worn very low so that Acevedo did not see his face. The officer who brought him to the precinct, on the night of the occurrence, stated that one suspect was killed, one was shot, and two were inside. He then viewed the appellant and Velez in the same room; both were alone and handcuffed. With admitted uncertainty, Acevedo identified appellant at the precinct as the third participant who carried a shotgun. On the date of the *Wade* hearing, this attendant could identify a photograph of Velez taken a day after the robbery, but he could not identify a photograph of appellant. Likewise, he could not make an in-court identification of either Velez or appellant.

Erald Grant, the other attendant, only viewed the third participant for a period of two seconds. Grant averred that the third participant was short and dark-skinned, but he could not describe the participant's face, clothes or other distinguishing characteristics. In the precinct after the occurrence, Grant was first permitted to view Velez and the appellant in an adjacent room. He then identified them as two perpetrators of the robbery. However, he too was unable to identify either Velez or the appellant at the *Wade* hearing.

Police Officer Kevin Moroney testified at the *Wade* hearing that, on the night of the robbery, Grant had identified both Velez and the appellant in the precinct. To the extent here relevant, Moroney also noted that, during the subsequent shoot-out, Rodriguez was wearing a light-colored dashiki and he fired a shotgun.

Where a witness, due to the lapse of time or change in the appearance of a defendant, cannot make an in-court identification, but has previously identified a particular defendant, that witness may then establish that the defendant in court is the same one whom he previously identified (CPL 60.25). A second witness may be called to establish the fact that the prime witness actually identified the defendant on a prior occasion *(People v Nival,* 33 NY2d 391, 396). Neither attendant could identify Velez or the appellant at the *Wade* hearing. Each of these attendants, however, allegedly made a precinct identification of those suspects on the evening of the robbery. In the absence of a prejudicial showup, Officer Moroney could have properly testified, had he been a witness thereto, that both

attendants had identified the appellant in the precinct. In fact, the officer only testified that Grant had made a prior identification of the appellant in the precinct. Since Moroney never substantiated the fact that Acevedo had actually identified the appellant on that prior occasion, Acevedo's testimony concerning his prior identification was totally incompetent and should have been suppressed. Moreover, Acevedo was improperly informed by an officer, prior to his identification of the appellant in the precinct, that two suspects had been captured (cf. *People v Posten,* 54 AD2d 948). The officer did not know whether appellant or Rodriguez was the third participant in the robbery. Nonetheless, his statement to Acevedo might have misled the latter into believing that appellant was in the station during the robbery.

The prosecution's case thus rested solely upon the substantiated identification made by Grant. Absent imperative circumstances, a precinct showup is discouraged for it normally tends to be unnecessarily suggestive and conducive to irreparable mistaken identification. *(People v Brown,* 20 NY2d 238; *People v Ballott,* 20 NY2d 600; *People v Toro,* 44 AD2d 848.) Although Grant's identification of the appellant at the precinct was made within one hour of the robbery, he had not seen the third participant's face during his two-second encounter with that individual. Furthermore, it should be stressed that both Rodriguez and the appellant were wearing light-colored outer garments. Likewise, at the shoot-out, Rodriguez rather than the appellant was firing the shotgun. In this factual background, the showup in the precinct may well have induced Grant to come to the unfounded conclusion that the appellant, rather than Rodriguez, was the third active participant in the robbery. As a result of this improper showup, Grant's and Acevedo's testimony concerning their precinct identification of the appellant and Moroney's bolstering testimony of precinct identification should be suppressed. A new trial should be held to determine the appellant's status and involvement, if any, in the robbery.

Accordingly, I recommend that the judgment be reversed, the motion to suppress be granted, and that a new trial be ordered.

SILVERMAN, LANE and SANDLER, JJ., concur with EVANS, J.; MURPHY, P. J., dissents in an opinion.

Judgment, Supreme Court, Bronx County, rendered on May 27, 1976, affirmed.