**Carlos J. GONZALEZ, Jr., Petitioner-Appellee,**

v.

**Edward HAMMOCK, Chairman, New York State Board of Parole, Respondent-Appellant.**

**No. 741, Docket 79–2226.**

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1980.

Decided Aug. 20, 1980.

Certiorari Denied Jan. 12, 1981.
See 101 S.Ct. 880.

---

Daniel Taub, Asst. Dist. Atty., Bronx, N. Y. (Mario Merola, Dist. Atty., Bronx County, Billie Manning, Asst. Dist. Atty., New York City, of counsel), for respondent-appellant.

James M. Morrissey, New York City (The Legal Aid Society, Federal Defender Services Unit, of counsel), for petitioner-appellee.

Before MOORE, MULLIGAN and MESKILL, Circuit Judges.

MOORE, Circuit Judge:

On July 18, 1975 at 10:20 p. m. Francisco Acevedo ("Acevedo") was helping a customer at a Merit Safe–Way Gas Station in the Bronx. He was approached by a tall, thin man, later identified as Jesus Velez ("Velez"), who removed a .45 caliber revolver from a bag and said "It's a stick up". (T. 142)[1] Velez took money from Acevedo and ordered him to walk toward the gas station office. On his way Acevedo saw a man (alleged to be Gonzalez) of medium height with a T–shirt, large Afro haircut and a dungaree hat pulling a shotgun out of his bag. (T. 146–50).

At the same time, the other gas station attendant, Erald Grant ("Grant"), was accosted by a short, dark–skinned man with a small shiny gun (later identified as one Devia). Velez joined Devia and ordered Grant to give him all his money, and then to walk toward the gas station office. On his way to the office, Grant passed and saw a man whom he later identified as the Petitioner.

The robbers escaped in a gold Cougar but were followed by a passing police car. After a chase, the Cougar stopped and Devia stepped out of the passenger side and began firing a .45 caliber pistol at the police. The

---

1. "T" stands for the transcript of the original trial in the New York Supreme Court. "W" stands for the transcript of the Wade hearing before the same court. The references are to page numbers.

fire was returned and Devia was killed. One Rodriguez, the fourth robber, jumped out of the driver's seat and fired a shotgun blast. He was wounded by the return fire but managed to escape. Rodriguez was later captured. The police found Velez and Gonzalez huddled in the back seat of the Cougar. A small silvery pistol was found on the front seat, where it had been thrown by Gonzalez.

Velez and Gonzalez were taken to the 42nd Precinct. Later, the witnesses, Grant and Acevedo, were taken to the same precinct. Although Grant knew he was being taken to the precinct in connection with the robbery, he did not know if there were any suspects in custody. At the precinct Grant was put in a room where he could see, through an open door, the suspects (Velez and Gonzalez). When he was interviewed and asked whether he could describe the robbers, Grant described Devia and then simply stated that the other two were the men he could see in the precinct, and described what each had done at the gasoline station.

Prior to the trial a *Wade* [2] hearing, which addressed itself to the admissibility of identification testimony by the two gas station attendants (Grant and Acevedo), was conducted. The trial judge held that "the procedures followed by the police in this case were not so unnecessarily suggestive and conducive to irreparable mistaken identification". (Petitioner's Br. at A5–6). There was no suggestion that the police had planned the so-called "show up" by stationing Grant where he could look into the office where Velez and Gonzalez were.

Gonzalez was convicted of two counts of robbery in the first degree in a trial before the Supreme Court of New York. His defense was based on a contention that he remained in the car and Rodriguez had actually been the robber. Gonzalez's conviction was affirmed on appeal to both the Appellate Division, *People v. Gonzalez*, 61 App.Div.2d 666, 403 N.Y.S.2d 514 (1st Dept. 1978), and the Court of Appeals, *People v. Gonzalez*, 46 N.Y.2d 1011, 416 N.Y.S.2d 239, 389 N.E.2d 834 (1979).

■ On appeal the Appellate Division focussed upon the propriety of the identification testimony stating: "At trial, Grant was unable to identify Gonzalez; however, Officer Moroney testified that while he questioned Grant at the station house and asked him to describe the third man, Grant looked into an adjoining office where appellant Gonzalez was standing and identified appellant Gonzalez as being the third man at the gas station". 61 App.Div.2d at 669, 403 N.Y.S.2d 514.[3] The court concluded "beyond any reasonable doubt that the third man was Gonzalez and not Rodriguez". 61 App.Div.2d at 669, 403 N.Y.S.2d at 516. Of importance is the physical appearance observed. It would require no more than a fleeting glance to identify an Afro hair style. The police officer stated that when taken out of the car Gonzalez had an Afro hair style. Rodriguez on the other hand had short hair. As the Appellate Division said: "the only way a jury could find that Gonzalez was not the third person at the gas station was, if in the course of the chase, Gonzalez and Rodriguez were somehow able to switch hair styles and shirts", 61 App.Div.2d at 670, 403 N.Y. S.2d at 516–a *reductio ad absurdum* situation. The New York Court of Appeals unanimously affirmed this Appellate Division decision. 46 N.Y.2d 1011, 416 N.Y.S.2d 239, 389 N.E.2d 834 (1979).

---

**2.** *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

**3.** "At trial, almost one–and–a–half years later, Mr. Grant was no longer able to identify defendant, but was able to recall that he had identified at the police station two people who had robbed him on the night in question. Following Mr. Grant's inability to identify appellant at trial, on the basis of a present recollection, Officer Moroney testified that he was certain that appellant Gonzalez was the person whom Mr. Grant had identified as the third gas station robber.

Under CPL 60.25, such testimony by a witness of his pretrial identification and testimony confirming such identification is admissible and constitutes evidence in chief. (CPL 60.25, subd. 2; *People v. Nival*, 33 N.Y.2d 391, 394–396, [353 N.Y.S.2d 409, 308 N.E.2d 883])," 61 App.Div.2d at 670, 403 N.Y.S.2d at 516.

Gonzalez then petitioned in the United States District Court for a writ of habeas corpus. The District Court granted the writ on October 12, 1979 finding that the identification of Gonzalez by Grant was unduly suggestive and created a substantial likelihood of irreparable misidentification. The Government appeals from the grant of the writ.

The only issue on this appeal is whether Gonzalez's due process rights were violated by the admission at trial of the evidence of Grant's identification of Gonzalez at the police station. (Petitioner's Br. at 23). The Supreme Court has long been concerned with the accuracy of eyewitness identification, that concern stemming from the fear that an erroneous identification would put an innocent man behind bars. *See, e. g., Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). However, the Court has adopted, in *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) one solution to the problem.

*Manson* rejected the contention that evidence from any suggestive identification procedure must be excluded. Instead, the Court adopted an approach which held that reliability was "the linchpin in determining the admissibility of identification testimony . . . ." 432 U.S. at 114, 97 S.Ct. at 2253. Thus, even if a confrontation is suggestive, "the central question [is] whether under the 'totality of circumstances' the identification was reliable . . . ." 409 U.S. at 199, 93 S.Ct. at 382. In assessing reliability, *Manson* adopted the five criteria outlined in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ The five *Biggers* factors to be considered in evaluating the reliability of an identification by a witness are:

1. his opportunity to view the criminal at the time of the crime;

2. his degree of attention;

3. the accuracy of any prior description;

4. his level of certainty in the identification;

5. the length of time between crime and confrontation. 409 U.S. at 199-200, 93 S.Ct. at 382.

We treat each separately:

1. *The view of the criminal.*

■ As Grant walked toward the office, as he had been ordered, he saw a man pulling a shotgun out of a bag. As he passed him, he took "a short look" at the man's face from a distance of three to four feet (T. 352). This glance lasted a few seconds (T. 352-53, 381). However, Grant observed him the entire time as Grant walked unhurriedly ("on my own time" (W. 212)) toward the office and the robber walked toward Grant (T. 352), which must have taken more than two seconds (W. 209-12). We think that this observation, as the twenty to thirty second one in *United States ex rel. Phipps v. Follette*, 428 F.2d 912, 916 (2d Cir.), *cert. denied*, 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970) afforded Grant enough of an opportunity to fix an image of the third robber, both the face and the clothing, in his mind. Of all characteristics, an Afro hair style would be the most noticeable. A mere glance would be sufficient for identification. Furthermore, this issue was placed squarely before a jury and thirteen State Court judges. Their respective decisions are entitled to great weight. Under these circumstances it cannot be said that Gonzalez did not receive due process. Federal courts should be reluctant to override State court decisions unless there be an error of constitutional magnitude.

2. *Degree of attention.*

Although Grant was not a trained observer of people, such as a police officer, there is little doubt that his attention would be riveted on a man who was pulling a shotgun from a bag.

3. *Prior descriptions.*

Grant had not had an opportunity to give the police a prior description. He was not questioned on his way to the precinct, and

when asked to describe the shotgun–wielding robber at the police station, he merely pointed him out as being across the hall.

### 4. *The level of certainty.*

Grant was positive of his identification of Gonzalez. At trial he stated he was certain at the station house that Gonzalez was the man carrying the shotgun (T. 366).

### 5. *Lapse of time.*

This robbery occurred at 10:20 p. m., Grant was brought to the police station around 11:00 p. m., and made the identification sometime between 11:00 and midnight. (W. 295). Thus, the identification occurred about one hour after the observation had been made. Surely the image of the robber was very fresh in Grant's mind when he spotted Gonzalez at the police station and identified him as the "shotgun" robber.

We glean from this analysis the fact that this identification was reliable. Grant saw the man in a well–lit gas station as Grant walked toward the office. He identified the man as Gonzalez with absolute certainty a short time after the robbery.

Even though the identification was inherently reliable, we must consider whether it was so unduly suggestive as to warrant its exclusion. There is the possibility of suggestiveness because of Gonzalez's being seen by Grant next to Velez, both with handcuffs on. This is not the case where this show–up was done intentionally or where a suggestive procedure was employed by the police to aid in their investigation. We hold that the inherent reliability of this identification, as embodied by the analysis of the five *Biggers* factors, clearly offsets the possible corrupting effect of any inadvertent suggestiveness at the police station.

There are two main reasons identification procedures have been suspect: first, the general problem of relying on eyewitness identification and second, the use of such procedures by overzealous police departments. Neither concern is implicated in this case. As indicated above, this identification was reliable. Furthermore, banning use of this identification will not deter any kind of untoward police practice.

Finally, as the Supreme Court has done, we must acknowledge other aspects of this case which, although peripheral, certainly do not detract from our decision. *See Manson*, 432 U.S. at 116, 97 S.Ct. 2243. These include the facts that a jury saw Grant and heard his testimony and accepted his statements concerning the circumstances surrounding the identification, and the identification itself. More importantly, Gonzalez admitted being in the automobile which contained the robbers of the gas station. This was not the chance of picking Gonzalez out of millions of others, but rather the third robber was either Gonzalez or Rodriguez. Finally, Acevedo described the third robber as having dungarees, a white T-shirt and an Afro. Gonzalez was so dressed that night. Rodriguez had on a dashiki and had short hair (T. 182–83). Thus, there was independent evidence bolstering the identification of Gonzalez.

Viewing this identification under the "totality of the circumstances" as the Supreme Court has prescribed, we hold that this reliable identification was admissible and that Gonzalez was properly convicted of robbery. The judgment of the District Court granting Gonzalez's petition for a writ of habeas corpus is reversed.