**Edward HAMELE, Petitioner,**

v.

**John R. MANSON, Commissioner, Connecticut Department of Correction, Respondent.**

**Civ. A. No. B–83–265.**

United States District Court, D. Connecticut.

Dec. 2, 1983.

440

Richard A. Fuchs, Bridgeport, Conn., for petitioner.

Donald A. Browne, State's Atty., Bridgeport, Conn., for respondent.

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

ZAMPANO, Senior District Judge.

In this application for a writ of habeas corpus brought pursuant to 28 U.S.C.

§ 2254, the petitioner contends that the state trial judge erred in 1) refusing to exclude a suggestive pretrial identification; 2) admitting testimony relating to the scientific analysis of physical evidence which was destroyed by police prior to trial; and 3) permitting the introduction of prior convictions for burglary and rape. In deciding the issues raised in the petition, this Court must apply the governing legal standards to the state courts' findings of fact which are entitled to a statutory presumption of correctness. See 28 U.S.C. § 2254(d) [1]; *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982) (per curiam); *Sumner v. Mata,* 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981).

## I.

The basic facts, as set forth by the Connecticut Supreme Court in *State v. Hamele,* 188 Conn. 372, 374–375, 449 A.2d 1020 (1982), are not in dispute:

At approximately 4:30 a.m. on May 14, 1977, the victims, a husband and wife, were awakened by an intruder in their Westport home. The intruder, who was carrying a gun and a flashlight, demanded money. After obtaining some money from the victims, the intruder forced the female victim to tie her husband with some stockings. After obtaining more money from the female victim's purse, the intruder then sexually assaulted her by forcing her to perform an act of oral sex. Following this, the female victim was also tied. A few minutes later the intruder left and the male victim called the police after freeing himself from his restraints. Because it was dark the victims had not been able to get a good look at the intruder's face, but were able to give the police a description of his general appearance, including his clothes, and of his voice, which was particularly distinctive in the pronunciation of certain words.

The defendant was stopped in his car a few minutes later by a Westport police officer about two and one-half miles

---

**1.** 28 U.S.C. § 2254(d) provides as follows:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

from the victims' home. The officer observed that the defendant matched the description of the intruder which he had heard on the police broadcast regarding the incident. The officer found a gun and a flashlight in the defendant's car. After reading him his rights, the officer then took the defendant to the scene of the crime.

While at the victims' home, the defendant was shown to the victims three times. Each time the defendant was asked to stand outside of an exterior screen door so that the victims could observe him. During two of these showups, the defendant was asked to speak certain words which the intruder had spoken. The female victim, though unable to identify the defendant's face, made a positive identification of the defendant as the intruder based upon his build, dress, voice, and diction. The male victim was unable to make a positive identification, though he noted similarities between the defendant and the intruder.

On October 3, 1979, petitioner was convicted by a jury of various counts of burglary, robbery, sexual assault and unlawful restraint, and sentenced to 16 to 40 years in prison. On appeal, the Connecticut Supreme Court at length considered each of the petitioner's claims of error, which were identical to those now raised before this Court, and affirmed the conviction. *Hamele*, 188 Conn. 372, 449 A.2d 1020.

## II. *Pretrial Identification*

■ Prior to trial, Judge Levine conducted a hearing to assess the admissibility of identification testimony by the two victims. See *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In a reasoned opinion, he concluded that there was no "substantial likelihood of irreparable misidentification" as a result of the procedures followed by the police, and denied the petitioner's motion to suppress. During the trial, Judge Cioffi held additional hearings and rejected the attack upon the constitutional validity of the identifications of the petitioner. On appeal, the Con-

necticut Supreme Court carefully reviewed the issue and affirmed the rulings of the lower court. These decisions are entitled to substantial weight and should not be overturned by a federal court unless there be an error of constitutional magnitude. *Gonzalez v. Hammock*, 639 F.2d 844, 847 (2 Cir.1980), cert. denied, 449 U.S. 1088, 101 S.Ct. 880, 66 L.Ed.2d 815 (1981).

■ The petitioner alleges and this Court agrees, that the "showup" identification procedures in the instant case were inherently less reliable than a "lineup", and therefore as a matter of law are constitutionally suspect. See, e.g., *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972); *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *Willin v. Ajello*, 496 F.Supp. 804, 807 (D.Conn.1980), aff'd, 652 F.2d 55 (2 Cir.1981). However, the suggestive nature of a showup does not necessarily result in an exclusion of the evidence at trial. Under the principles enunciated in *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the test to determine the admissibility of identification testimony is one of reliability. See also *Biggers*, 409 U.S. at 199, 93 S.Ct. at 382 ("central question [is], whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive").

■ The five factors which should be considered in evaluating the reliability of identification evidence are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of any prior description; (4) the witness' level of certainty in identification; and (5) the length of time between the crime and the confrontation. *Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382–383. See also *Jackson v. Fogg*, 589 F.2d 108, 111 (2 Cir.1978).

### A. *The Victims' View of the Petitioner*

There is little question that the victims had ample opportunity to observe the petitioner's height, weight, dress and voice.

More than a sufficient amount of time elapsed for the victims to fix the intruder's characteristics in their minds during the course of the robbery and sexual assault. As pointed out by Judge Levine: "A criminal committing those types of crimes in the proximity which was necessary for their commission, particularly sexual assault, gave the victims an excellent opportunity to view the person they subsequently identified." See, e.g., *Gonzalez*, 639 F.2d at 847; *United States ex rel. Phipps v. Follette*, 428 F.2d 912, 916 (2 Cir.), cert. denied, 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970).

### B. *Victims' Degree of Attention*

It is safe to assume that the victims of these serious crimes had their eyes riveted on the intruder who was carrying a flashlight and a gun. See *Biggers*, 409 U.S. at 200, 93 S.Ct. at 382; *Gonzalez*, 639 F.2d at 847; *Willin*, 496 F.Supp. at 808.

### C. *Accuracy of the Identification*

The victims' account of the intruder's appearance enabled the police within minutes after the crimes to detain the petitioner as the person described.

### D. *Victims' Level of Certainty*

At the showup, the female was definite in her identification; the male victim did not positively identify the petitioner, but he did note similarities between the petitioner and the intruder. At the trial, neither victim could identify the petitioner's facial characteristics, but did testify that he was the person who appeared before them at the showup shortly after the crimes were committed. See *Gonzalez*, 639 F.2d at 846 (victim at trial unable to identify defendant, but was certain at time of showup).

### E. *Lapse of Time*

The victims' identifications of the petitioner occurred within two to three hours after their initial observations of him. Surely at that time the appearance of the intruder was still fresh and vivid in their minds. See *Gonzalez*, 639 F.2d at 848.

Under the totality of the circumstances, the Court concludes the victims' identifications of the petitioner were relia-ble and, therefore, were not so constitutionally tainted as to bar their admission at trial.

### III. *Destroyed Evidence*

Petitioner next claims that the trial court's failure to suppress the F.B.I. testimony concerning analysis of destroyed hair samples deprived petitioner of his due process rights.

In the course of their investigation, police obtained hair samples from petitioner's underpants, shirt and socks. These, together with a sample of the female victim's hair, were sent to the F.B.I. laboratory for analysis. The F.B.I. issued a report on July 18, 1977, which stated that the hairs found on the underpants of petitioner did not microscopically match those of the female victim, but that hairs "microscopically like" those of the female victim were found on petitioner's shirt and socks. The report concluded that the hairs "could have originated from [the female victim]", but advised that there was no way the hair could be "positively identified as originating from a particular person to the exclusion of all others."

In a timely fashion, petitioner filed a motion for disclosure and production which included a request for physical evidence and any scientific tests related to the case. The motion was granted on July 20, 1977. On August 17, 1977, the State erroneously claimed that its file contained no scientific tests. This error was not rectified until May 21, 1979, 22 months later, when the State made a supplemental disclosure which included copies of the reports pertaining to analyses of semen stains, soil samples and hair samples. After this disclosure, petitioner did not request to see the evidence, nor did he obtain his own scientific analyses.

During a pretrial evidentiary hearing in September 1979, it was revealed to the petitioner that some of the physical evidence had been disposed of by Westport police in the mistaken belief that the case was no longer pending. *Hamele*, 188

**444**

Conn. at 380, 449 A.2d 1020. Not available at trial were hair samples, tissues, socks, blue jeans, a t-shirt, ammunition and a leather holster. Still in the possession of the State's Attorney's office were a gun, jacket, belt, money, a housecoat, socks, pantyhose and a nightgown.

After learning of the destruction, petitioner moved for suppression of testimony concerning the hair samples or a jury charge that an inference adverse to the State could be drawn from the destruction. The trial court denied the motion to suppress but did include in its charge a reference to the destroyed evidence.[2]

■ When evidence becomes unavailable, the first inquiry is whether the evidence was suppressed or inadvertently lost or destroyed. *U.S. v. Beltempo,* 675 F.2d 472, 479 (2 Cir.), cert. denied, 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982). The Connecticut Supreme Court found that the evidence was mistakenly destroyed, and the record supports this factual finding. Under these circumstances, the Court must employ a balancing test considering the prosecution's culpability for the loss, the significance of the evidence in light of its nature, its bearing on the critical issues in the case, and the strength of the government's untainted proof. *U.S. v. Grammatikos,* 633 F.2d 1013, 1019–20 (2 Cir.1980).

Here, it seems clear from the factual findings that: 1) the state prosecutors took no part in, nor until long after the fact were even aware of, the local police's destruction of evidence; 2) the petitioner

failed in a timely fashion to request an independent analysis of the evidence while it was available; 3) at trial the petitioner presented his own expert who testified concerning the inherent unreliability of the F.B.I.'s analysis; 4) there was sufficient other evidence (the gun, money from the robbery, the belt and other items used to restrain the victims, the petitioner's presence near the scene of the crime, and the victims' identifications) which supported the conviction; and 5) the trial judge adequately instructed the jury concerning the destroyed evidence which permitted it to draw an adverse inference from the unavailability of the evidence. See *Beltempo,* 675 F.2d at 479; *United States v. Love,* 482 F.2d 213, 218–19 (5 Cir.), cert. denied, 414 U.S. 1026, 94 S.Ct. 453, 38 L.Ed.2d 318 (1973); *Hamele,* 188 Conn. at 381–82, 449 A.2d 1020.

■ Under these circumstances, the petitioner was not deprived of his due process rights by the admission at trial of hair analysis testimony.

### IV. *Admission of Prior Conviction*

Petitioner filed a motion *in limine* prior to trial to "exclude all references" to his extensive prior record in the event he decided to testify in his own defense. He contends that the trial judge's denial of his motion prejudicially precluded him from taking the stand. On appeal and before this Court, he limits the error to the refusal of the trial judge to bar any mention by the

---

**2.** The trial court's instruction included the following:

Now you have heard testimony in this case concerning scientific testing of certain items. Before you give credence to this testimony, you must be satisfied that these items reached the laboratory for analysis without being tampered with or changed in any substantial manner. You have also heard testimony relating to items which the police claim they seized and further testified were lost or destroyed. Before you give credence to this testimony, that these items were seized and the description given to you by the witnesses in court, etc., you must take into account those factors which I have previously related to you concerning all testimony. That is, you

should take into account the demeanor of the witnesses as it bears on credibility, the substance of their testimony, the probability or lack thereof that what the witness says is true, and all other criteria relative to the credibility of a witness that I have previously mentioned to you. Ordinarily, the State need not produce all the available evidence in a case, if however, you find that there was evidence which was available only to the State, which it would naturally have produced, and such evidence was not produced, you may draw the inference—you don't have to—but you may draw the inference that such evidence was unfavorable to the State.

*Hamele,* 188 Conn. at 379 n. 1, 449 A.2d 1020.

prosecution of his 1968 convictions for burglary and rape.

The Connecticut Supreme Court found that petitioner had failed to show that he would have taken the stand "despite the admissibility of some of his criminal record, if only the 1968 convictions had been excluded." *Hamele,* 188 Conn. at 384, 449 A.2d 1020. The court also noted that if the petitioner had chosen to testify, the trial judge's instructions would have cured any prejudice, and that the decision was otherwise correct under Connecticut law because the conviction was not too remote to lack probative value. In addition, the court noted that even if the ruling were erroneous, the error was harmless.

■ Evidentiary rules are governed by state laws in state courts. With respect to such rules, federal habeas courts must defer to a state court's interpretation of its own rules of evidence unless there is a flagrant abuse of constitutional protections or the evidence so tainted the trial that it was rendered fundamentally unfair. *Spencer v. Texas,* 385 U.S. 554, 569, 87 S.Ct. 648, 656, 17 L.Ed.2d 606 (1967).

■ This Court agrees with the state courts' findings that the ruling to admit petitioner's 1968 convictions was appropriate under Connecticut law. It is well established in this state that proof of prior convictions for crimes punishable by more than one year imprisonment may be used to impeach a witness if, in the discretion of the trial court, the probative value of the conviction outweighs its prejudicial effect. *State v. Shaw,* 185 Conn. 372, 441 A.2d 561, 566, cert. denied, 454 U.S. 1155, 102 S.Ct. 1027, 71 L.Ed.2d 312 (1982); *State v. Bitting,* 162 Conn. 1, 10, 291 A.2d 240 (1971);

*State v. Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970). In this regard, the trial judge should consider the nature of the conviction, its bearing on veracity, its age, and its propensity to influence the minds of jurors improperly. *U.S. v. Palumbo,* 401 F.2d 270, 273 (2 Cir.1968), cert. denied, 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969); *Marquez,* 160 Conn. at 51, 273 A.2d 689.

■ The Connecticut legislature has determined that crimes punishable by more than one year imprisonment affect the credibility of a witness, Conn.Gen.Stat. § 52–145(b), and petitioner's rape and burglary convictions fall into this category. Petitioner's 1968 convictions are not too remote under Connecticut law. Remoteness is a factor to be weighed by the trial court in exercising its discretion. In this regard, the ten year age limit, which acts only as a "rough benchmark" in determining whether the trial court abused its discretion, may be measured from either the date of conviction or release from resulting confinement. *State v. Nardini,* 187 Conn. 513, 525, 447 A.2d 396 (1982). In addition, it is the general practice of Connecticut courts to counteract any prejudicial effect of admitting a prior conviction by a strong limiting instruction to the jury, which the trial judge gave in the instant case.[3] See *Shaw,* 441 A.2d at 566 (prior conviction for manslaughter admissible in assault prosecution with limiting instruction).

Thus, petitioner has failed to show that the trial court's ruling was so flagrantly abusive of constitutional protections that he was denied a fair trial.

In conclusion, although all three issues raised by petitioner are of potential consti-

---

**3.** From the bench, the trial court stated that it would give the following instruction to the jury:
... I would give a very strong instruction at that time, and along the lines that I would direct them empathically [sic], the jury, that this evidence is to be used for one purpose only, if they choose to use it, for this purpose, and that is as it effects [sic] credibility. They are not to consider this at all in determining whether or not the defendant has committed this particular crime, as far as its probative

value in this particular case. They would further be cautioned at that particular time that it is the evidence in this case, which either will convict or not convict the defendant, not any past acts that he might have committed. The court would give a similar instruction at the conclusion of the trial during its general instructions, so the instruction would be given twice.
Tr. at 656.

tutional significance, none of them, singly or cumulatively, constitutes a constitutional violation to merit the issuance of a writ of habeas corpus. The petition is hereby denied.

Dated at New Haven, Connecticut, this 2nd day of December, 1983.[4]

---

**4.** The Court commends court-appointed attorney Richard A. Fuchs for his conscientious and thorough representation on behalf of the petitioner.