Reginald L. PHILLIPS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–514.

Court of Criminal Appeals of Oklahoma.

May 18, 1988.

Rehearing Denied June 24, 1988.

Thomas Dee Frasier, Everett R. Bennett, Jr., Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Reginald L. Phillips, appellant, was tried by jury and convicted of First Degree Rape (21 O.S.1981, § 1114), First Degree Burglary (21 O.S.1981, § 1431), two counts of Forcible Sodomy (21 O.S.1981, § 888), Assault and Battery With a Dangerous Weapon (21 O.S.1981, § 645), and Feloniously Pointing a Weapon (21 O.S.1981, § 1287), in Case No. CRF–85–3055, in the District Court of Tulsa County, the Honorable Jay D. Dalton, District Judge, presiding. The jury assessed punishment respectively at imprisonment for twenty-five (25) years, ten (10) years, thirteen (13) years, thirteen (13) years, ten (10) years, and ten (10) years. Judgments and sentences were imposed in accordance with the jury's verdict, the sentences to run consecutively. We reverse in part and affirm in part.

Just before 5:00 a.m. on August 5, 1985, C.B. awoke to find a man in her bed and a knife at her throat. C.B. grabbed the blade of the knife and, in the resulting struggle, the blade snapped, severely cutting her hand. C.B. escaped from her bed and tried to break through the pane of her bedroom window. The attacker grabbed her, and C.B. clearly saw his face by the light streaming through the bedroom window. The attacker was clad only in shorts. Turning around, C.B. saw her gun, which she kept under a pillow, exposed on the bed. C.B. dove for the gun, whirled around, and placing it under the attacker's chin, pulled the trigger three times. When C.B.'s husband originally gave her the gun, she unloaded it and reloaded it with only one cartridge, which she placed directly under the hammer; therefore, the hammer had to strike five empty cylinders before the gun would fire.

The attacker wrestled the gun from C.B., forced her to undress, and, holding the cocked gun to the back of her head, forced her to perform fellatio, raped her, and bit her on the vagina. C.B. fled to a bathroom and braced the door closed with her feet. She heard the kitchen window open. Later, C.B. discovered the attacker had entered her home by tearing off a screen and forcing open the window in her daughter's bedroom and exited by the kitchen window.

After determining that her attacker had fled, C.B. called a friend, who called the police. The police took C.B. to the hospital, where the cuts on her hand were sutured, her other cuts and abrasions were treated, and a rape kit prepared. While C.B. was in the hospital, the police canvassed the neighboring homes. After C.B. was released from the hospital, a next door neighbor's son told her later that morning that her attacker might be the man visiting them. C.B. called the police, who interviewed the appellant. The police interviewed appellant in a patrol car, rather than in the house, because of a report that C.B.'s missing gun might be in the house. C.B. stood in her front yard, and when the police escorted appellant to the police car for questioning, C.B. said, "Oh, my God, that is him." The next door neighbor gave to the police appellant's shorts, which had blood on them, and a cartridge found on the floor by the couch where appellant was sleeping, which was the same caliber and brand of cartridge as originally loaded in the gun stolen from C.B. The gun itself was never recovered.

■ For his first assignment of error, appellant asserts the trial court erred by excluding on cross-examination an exculpatory statement offered in his favor concerning the origin of cuts on his hands. After appellant's arrest, a police officer questioned appellant about the cuts on both of his palms and on the finger of his left hand. Appellant denied attacking C.B. When appellant tried to cross-examine the police officer to elicit from him appellant's explanation for the cuts on his hands, the State objected on hearsay grounds. Appellant made an offer of proof outside the hearing of the jury that he told the officer he cut his right palm at work, his left palm on his car hood, and his finger on a fishing net. The court, relying on *Williams v. State*, 542 P.2d 554 (Okla.Crim.App.1975), excluded the out-of-court statement as a self-serving exculpatory statement. In *Williams* the out-of-court statement excluded from evidence was a self-serving videotape in which the defendant named his co-defendant as the triggerman in a murder. Here, appellant sought to elicit the self-serving statement on cross-examination of the police officer who interviewed him at the police station.

We observe initially that an out-of-court statement offered *against* a party opponent is not hearsay under 12 O.S. 1981, § 2801(4)(b)(1), and is admissible, not because of any guarantee of trustworthiness of the out-of-court statement but as an accommodation to the adversary system. *McCormick on Evidence* § 262 (E. Cleary, 3rd ed. 1984). *See also* 1 L. Whinery, *Guide to the Oklahoma Evidence Code* 274 (1985).

An out-of-court self-serving exculpatory statement, on the other hand, when offered in *favor* of a party opponent in a civil or criminal trial, is hearsay, and to be admissible must either fall within a firmly rooted hearsay exception or the declarant must take the stand and be available for cross-examination. 29 Am.Jur.2d *Evidence* §§ 622, 623 (1967). *See also* 2 *Wharton's Criminal Evidence* § 294 (C. Torcia, 14th ed. 1986). Self-serving declarations are untrustworthy and permitting their introduction under Section 2801(4)(b)(1) could open

the door to fraud and perjury and possibly lead to the introduction of manufactured evidence. 29 Am.Jur.2d at 675; 2 Wharton's at 286.

Appellant argues the statement was admissible because it was not offered to prove the truth of the matter asserted. We disagree. Appellant offered this out-of-court statement to prove he did not receive the injuries during the attack on C.B., but rather at work and on other occasions. Thus, the statement was offered to prove the truth of the matter asserted and constituted hearsay.

■ Appellant next argues the statement was admissible as an exception to the hearsay rule as a statement concerning "then existing mental, emotional, or physical condition," relying on 12 O.S.1981, § 2803(3). We disagree. Declarations of present physical condition are limited and do not include descriptions of past pain or symptoms "as well as accounts of the events furnishing the cause of the condition." *McCormick on Evidence* 838–39 (E. Cleary, 3rd ed. 1984) (footnote omitted). Section 2803(3) is a specialized application of the broader rule embodied in Section 2803(1) recognizing a hearsay exception for statements describing a present sense impression, the cornerstone of which is spontaneity. *Id.* at 839. The foundation ordinarily required for admission under Section 2803(3) "is a showing of a statement describing a then existing bodily condition of the declarant, reserving to the judge, however, discretion to exclude if circumstances disclose clearly that the statement was made with a view to manufacturing evidence." *Id.* (footnote omitted). "If circumstances clearly indicate a lack of spontaneity, e.g. an intention to manufacture evidence, exclusion should follow." *Id.* (footnote omitted).

In the instant case, the statement made by appellant to the police officer several hours after the attack on C.B. lacks the requisite spontaneity for admission under Section 2803(3), relates an account of the cause of the physical condition, and, in the trial court's opinion, was made with a view

to manufacture evidence. We find no abuse of discretion in excluding the statement as hearsay. Similarly, appellant's arguments that the statement was admissible to prove intent, that the statement constituted a verbal act rather than a verbal statement, and that exclusion of the evidence denied him of his constitutional right to confrontation and cross-examination are without merit. Appellant has failed to prove he was prejudiced by the trial court's refusal to permit the officer to answer the questions propounded. *Hall v. State*, 698 P.2d 33, 36 (Okla.Crim.App.1985); *Reagor v. State*, 51 Okl.Cr. 66, 299 P. 516, 518 (1931).

■ For his second assignment of error, appellant asserts the State withheld an exculpatory statement in the prosecutor's possession that C.B. described her attacker as being in excess of 6' tall and weighing between 210 and 220 lbs. Appellant relies on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Collins v. State*, 561 P.2d 1373 (Okla.Crim. App.1977), *cert. denied*, 434 U.S. 906, 98 S.Ct. 306, 54 L.Ed.2d 193 (1977).

Appellant, without objection by the State, introduced into evidence, as Defense Exhibit No. 7, a copy of the Rape Examination Report in which the examining physician reported "[t]he patient further describes the assailant as a thirty to thirty-five-year old black male with mustache and beard, approximately 6'2" or maybe greater and approximately 200 to 220 lbs." Thus, the jury was fully informed that the victim had previously identified her assailant as taller and heavier than appellant. Moreover, the State submitted, at appellant's request, copies of all interviews with the victim, which the trial court reviewed in chambers and found no exculpatory material. "Since it does not appear that the State suppressed any evidence in its possession which tended in anyway to exculpate the defendant, or to strengthen his defense, we find this assignment of error to be without merit." *Collins*, 561 P.2d at 1382.

■ For his third assignment of error, appellant asserts the State fundamentally erred by suggesting on cross-examination of a defense witness that appellant was guilty of other crimes and implied to the jury that appellant was not a truthful and law abiding citizen. Appellant called his employer to the stand, who testified he had known appellant for twenty years. In response to the question, "tell this jury what kind of person is Reginald Phillips," the witness testified, "What kind of person? He is a good honest individual." The State made an offer of proof that appellant previously pled guilty to possession of controlled drugs and intended to ask the witness whether that would affect his opinion of the appellant's reputation. The trial court refused the prosecutor's request to explore appellant's previous conviction and confined the State to appellant's reputation for truthfulness and untruthfulness. On cross-examination, the State asked the character witness:

Q. It is my understanding that you are not here today to tell the jury about Mr. Phillips' reputation in the community for truthfulness or veracity?

A. I am here to state that he is truthful.

Q. All right. Is that based upon some opinion that you have gathered from the community, sir?

A. Some opinion?

Q. From your own personal opinion?

A. My own personal opinion.

Under 12 O.S.1981, 2405(A), when the accused places his character into issue by reputation or opinion evidence, "inquiry is allowable on cross-examination into relevant specific instances of conduct." The prosecutor may then cross-examine the witness as to specific instances of conduct, including former convictions, within the guidelines of 12 O.S.1981, § 2609, to determine whether they would affect the witness' opinion of the accused's character. *Kennedy v. State*, 640 P.2d 971, 981 (Okla. Crim.App.1982); *Boomershine v. State*, 634 P.2d 1318, 1319 (Okla.Crim.App.1981). In the instant case, it was error for the trial court to restrict the State's cross-examination of the witness. Appellant cannot now complain that the State attempted to impeach his reputation, when the State

had every right to do so. In any event, the prosecutor abided by the court's ruling and did not introduce appellant's former conviction. Appellant has failed to show he was prejudiced by the questions asked on cross-examination. This assignment of error is without merit.

For his fourth assignment of error, appellant asserts the trial court erred by failing to suppress C.B.'s in-court identification because appellant had been subjected to three one person showups with C.B. which tainted the in-court identification. As previously mentioned, C.B. stood in her front yard when the police escorted appellant to a patrol car for questioning and identified appellant as her attacker at that time. C.B. saw appellant on two other occasions: once when she got into a patrol car to go to the station to give her statement and appellant was sitting in an adjacent patrol car, and later when appellant passed the room where C.B. gave her statement. Appellant relies on *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Appellant does not raise a right to counsel argument, but rather argues the confrontations were so unnecessarily suggestive that he was deprived of due process. *Id.* at 302, 87 S.Ct. at 1972.

"There are two main reasons identification procedures have been suspect: first, the general problem of relying on eye-witness identification and second, the use of such procedures by overzealous police departments." *Gonzalez v. Hammock*, 639 F.2d 844, 848 (2nd Cir.1980), *cert. denied*, 449 U.S. 1088, 101 S.Ct. 880, 66 L.Ed. 2d 815 (1981). "One man showups have been criticized as 'inherently suggestive and a practice to be avoided when a lineup procedure is readily available.' However, evidence of a showup without more does not violate due process; the test is whether under a totality of the circumstances the identification was reliable." *Pratt v. Parratt*, 615 F.2d 486, 488 (8th Cir.1980) (citations omitted). *See Chatman v. State*, 716 P.2d 258, 260 (Okla.Crim.App.1986) (Parks, P.J., specially concurring).

[R]eliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-*Stovall* confrontations. The factors to be considered are set out in *Biggers*. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). *See also Boyd v. State*, 743 P.2d 658, 660–61 (Okla.Crim.App.1987).

■ In the instant case, there is no evidence that the police planned the so-called "showup" confrontations. The attack on C.B. lasted for at least an hour. She had an opportunity to clearly view appellant's face by the light shining through her bedroom window. Her attention was highly focused on her attacker and, at trial, C.B. testified "I saw him perfectly. I perfectly saw his face, and at that second I said I will remember that face if I live." C.B. described her attacker as taller and heavier than appellant; however, C.B.'s attention was focused on memorizing her attacker's facial features and, except for when she struggled with her attacker at the window, her only view of the attacker occurred while he was either seated or lying in bed with her, which made it difficult for C.B. to gauge her attacker's height and weight accurately. When C.B. first saw appellant's face while she stood in her front yard, she immediately said, "Oh, my God, that is him," indicating no uncertainty in her identification. Finally, the time between the crime and the confrontation was only a matter of hours. We find the in-court identification inherently reliable, and no reversal is warranted. *See Chatman*, 716 P.2d at 260. This assignment of error is without merit.

■ For his fifth assignment of error, appellant asserts the State failed to prove the essential element of penetration necessary to sustain a conviction for cunnilingus,

relying on *Hicks v. State*, 713 P.2d 18, 20 (Okla.Crim.App.1986), at trial in his motion for a directed verdict and again on appeal. We agree.

Appellant was charged by information with two counts of oral sodomy, one count for forcing C.B. to perform fellatio on him and one count for performing cunnilingus on C.B. The evidence adduced at trial proved that appellant bit C.B.'s vagina. The State introduced no evidence of penetration as to the charge of cunnilingus, but only for the charge of fellatio. Under 21 O.S.1981, § 887, the crime against nature requires "sexual penetration, however slight." No conviction for sodomy can stand absent proof of penetration. *Hicks*, 713 P.2d at 20. Inasmuch as the State failed to prove the essential element of penetration, we have no alternative but to reverse the conviction for oral sodomy (cunnilingus) in Count 4 and remand with instructions to dismiss. *See Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978).

■ As to appellant's arguments that the State failed to prove the essential element of breaking, necessary to sustain a conviction for first degree burglary, and failed to prove that appellant was not married to C.B., necessary to sustain a conviction for first degree rape, we observe: first, that 21 O.S.1981, § 1431(3) includes entry by "opening a window" as first degree burglary and the evidence adduced at trial proved that entry was gained by opening the window in the daughter's bedroom; second, that C.B. testified she never met the appellant before he attacked her, the sexual intercourse was accomplished by use of a knife and a gun, and C.B. was severely cut during the rape, which evidence was sufficient to establish there was no marital relationship between the victim and appellant. *See Vaughn v. State*, 697 P.2d 963, 966 (Okla.Crim.App.1985); *Blackwell v. State*, 663 P.2d 12, 16 (Okla.Crim. App.1983).

■ For his sixth assignment of error, appellant argues the court erred in overruling his objection to certain testimony by C.B., which he argues was unresponsive, speculative and irrelevant. C.B. testified appellant told her: "no, I am not going to hurt your daughter or even your dog or your cats," and C.B. thought to herself, "Oh, my God, I said this man knows me." Later, C.B. started to repeat what her next door neighbor's son told her, but the court instructed her that she could only testify as to her statements, not to what the boy told her. The boy's statement was not revealed to the jury, and thus no error occurred. We cannot say the trial court abused its discretion in admitting the testimony. *See Chatham v. State*, 712 P.2d 72, 73 (Okla. Crim.App.1986).

■ For his seventh assignment of error, appellant asserts the testimony of an expert witness, that it is possible for two individuals to have consistent hair but he had never seen it, not even in identical twins, should have been stricken from the record. Appellant argues the testimony was irrelevant, unresponsive, should have been excluded because the prejudicial effect substantially outweighed the probative value under 12 O.S.1981, § 2403, and the testimony was calculated to inflame the jury.

Under 12 O.S.1981, § 2403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, and the trial court should resolve all doubts in favor of admitting the evidence. *Robinson v. State*, 743 P.2d 1088, 1090 (Okla.Crim.App.1987). The party objecting to the introduction of relevant evidence has the burden of establishing that the prejudicial effect substantially outweighs the probative value. *Croney v. State*, 748 P.2d 34, 37 (Okla.Crim.App. 1987). Appellant failed to carry his burden of proof that the possible prejudicial effect of the testimony of the expert witness substantially outweighed its probative value. We find no abuse of discretion in admitting the evidence. This assignment of error is without merit.

For his eighth assignment of error, appellant reargues his second assignment of error. Inasmuch as the trial court examined the transcripts of all statements made by C.B. to the police and found no exculpa-

tory material, and appellant has presented no evidence to the contrary, we find nothing would be gained by addressing this assignment again.

Appellant's ninth assignment of error is not supported by citation to relevant authority. Finding no fundamental error, this assignment is not properly before the Court. *Gille v. State*, 743 P.2d 654, 656 (Okla.Crim.App.1987).

 For his tenth assignment of error, appellant argues the punishment imposed is excessive. The facts and circumstances of this case reveal the evidence supports the jury's verdict; the record is free from error, other than to count four, which would justify a modification or reversal; and the punishment imposed on the remaining counts is within the statutory range. *Fincher v. State*, 711 P.2d 940, 942–43 (Okla.Crim.App.1985). Nor does the fact that the sentences were imposed to run consecutively shock the conscience of the Court, requiring modification of the sentence. *Shultz v. State*, 715 P.2d 485, 488 (Okla.Crim.App.1986). This assignment of error is without merit.

Accordingly, for the foregoing reasons, appellant's conviction for Forcible Sodomy (cunnilingus) in Count 4 is REVERSED and REMANDED with instructions to DISMISS. The remaining judgments and sentences should be, and hereby are, AFFIRMED.

BRETT, P.J., specially concurs.

BUSSEY, J., concurs in results.

BRETT, Presiding Judge, specially concurring:

I concur in this decision, but because of my personal feelings I feel compelled to make this statement.

21 O.S.1981, § 886, a 1910 statute setting forth the "Crime Against Nature" does not offer any definition of what the crime constitutes. In 1982, in an effort to offer some substance to the aged statute, the Legislature added 21 O.S.1982 Supp., § 888, "Forcible Sodomy." We are still left without a clear definition of what constitutes the offense of various forms of sodomy. As I stated in *Golden v. State*, 695 P.2d 6 (Okl.Cr.1985):

This writer has for many years been of the opinion that Section 886 is unconstitutionally vague in its face. *See Canfield v. State*, 506 P.2d 987, 989–990 (Okl. Cr.1973) (Brett, J., concurring in part, dissenting in part.) However, my colleagues on this Court and the Justices of the United States Supreme Court, in construing similar statutes, have disagreed. *See Moore v. State*, 501 P.2d 529 (Okl.Cr. 1972) and *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973). Therefore, as a matter of stare decisis, I am compelled to uphold the statute and deny this assignment of error. *See Clayton v. State*, 695 P.2d 3, 55 O.B.J. 1786 (Okl.Cr.1984).

*See also Hicks v. State*, 713 P.2d 18, 19 (Okl.Cr.1986).

The majority opinion correctly states: "The State introduced no evidence of penetration as to the charge of cunnilingus, but only for the charge of fellatio. Under 21 O.S.1981, § 887, the crime against nature requires 'sexual penetration,' however slight. No conviction for sodomy can stand absent proof of penetration."

Because of the lack of definition in the "Crime Against Nature" statute, nothing is stated concerning "cunnilingus." Also, because of our general understanding of the English language and depending on the dictionary definition of certain words, "cunnilingus" is impliedly included in Section 886. Then Section 887, adds the penetration requirement.

Webster's Third International Dictionary, Unabridged, defines "cunnilingus" as "stimulation of the vulva or clitoris with the lips or tongue." However, because of the antiquated nature of the Oklahoma Statutes an additional requirement is made to prove the act of "cunnilingus" which is *penetration*. It is tacitly admitted that the accused did everything that was alleged, but the State failed to have the prosecutrix to state that she felt the defendant's tongue inside her. Hence, the conviction must fail. This appears to be a sad state

of affairs. The woman is humiliated, embarrassed and degraded but because of the antiquated nature of the Oklahoma Statutes, her assailant is allowed to go unpunished for that offense.

Because of the stare decisis, I am compelled to concur in this decision. The solution to this dilemma lies squarely with the Legislature.